THE AMERICAN INSURANCE COMPANY vs. GALLATIN and another.

*December 2 — December 16, 1879.*

INSURANCE AGAINST FIRE. *Waiver or estoppel by act of agent.*

1. Fire insurance policy, with condition that it should be avoided by additional insurance taken without consent of the secretary of the insurance company indorsed. The application was made to L. and K., local agents of the company, who were mere surveying agents; and was forwarded by them to the company, which sent the policy to the insured from its principal office. Afterwards L. and K. dissolved partnership, but both continued to act as agents for the company, L. becoming a "recording agent," with power to issue policies, etc., and K. continuing to be a mere surveying agent. Subsequently the assured applied to L. for further insurance on the same property, and was referred by him to K.

The American Ins. Co. vs. Gallatin and another.

He then applied to K., who sent him to agents for other insurance companies, and these issued to him another policy on the property in another company, and soon after informed K. of the fact, who, with knowledge of the prior policy, took no objection; and the assured was not notified by any person that such additional insurance rendered his former policy invalid. No consent of the secretary was indorsed on the first policy. *Held*, that for a loss occuring after these transactions, a recovery could be had upon such first policy; L. having so acted that the assured had a right to believe that he consented to the further assurance, and the company being bound by L.'s acts as a waiver or estoppel.

2. The mere fact that an application to an agent for insurance is forwarded by him to the company's principal office for approval, is not sufficient to charge the assured with notice of the exact nature and limits of the agent's authority; and, in the absence of other proof that the assured here had notice that K. was only a surveying agent, K.'s consent to the further assurance also binds the company, by way of waiver or estoppel.

3. This cause is decided (as was *Fleming v. Ins. Co.*, 42 Wis., 616) without reference to sec. 1, ch. 13, Laws of 1871, the construction of which is not determined.

RYAN, C. J., dissented from the judgment.

ERROR to the Circuit Court for *Winnebago* County.

The action below was on a policy of insurance against loss by fire, issued by the defendant company to the plaintiff *Gallatin*, on his dwelling-house in the city of Oshkosh, and household furniture and wearing apparel therein. In case of loss, a portion of the insurance money was payable to the plaintiff *Kuettle* by the terms of the policy. The property was destroyed by fire during the term for which the policy was issued.

A few weeks preceding the fire, *Gallatin* procured other insurance on the same property in another company, and no consent thereto of the secretary of the defendant company was written on the policy in suit. The only defense made to the action is, that the policy was thereby rendered void.

The condition in the policy on which the defense is founded, is as follows: "If the assured shall have obtained, or shall hereafter obtain, any other insurance on the property hereby insured, or on any part thereof, without the consent of the

secretary of this company written hereon, then the policy shall be void."

After the testimony had all been given, the circuit judge directed the jury to find for the plaintiffs, and to assess their damages at $373.32. A verdict was thereupon returned as directed. It is conceded that, if the plaintiffs are entitled to recover, the damages are assessed at the sum due on the policy.

The testimony is sufficiently stated in the opinion. The circuit court denied the defendant's motion for a new trial, and judgment was entered pursuant to the verdict; and the defendant company brought the case to this court by writ of error.

The cause was submitted on the brief of *Charles W. Felker* for the plaintiff in error, and that of *Weisbrod & Harshaw* for the defendants in error.

The argument for the plaintiff in error was substantially as follows: 1. The company never consented to the procurement of additional insurance, and never even had any notice or knowledge of the fact until after the loss. The recording agent, Lawson, through whom alone the company could be charged (in the absence of any act done by, or communication had with, the general officers of the company), testified that he never consented to further insurance or had any notice or knowledge thereof before the fire. When *Gallatin* applied to him for insurance in the fall of 1876, and again just before the fire, he did not give his consent. He referred him to King, for an obvious reason. Lawson being then a recording agent, his consent would have bound the company; while if King took the application for additional insurance, he must necessarily submit it to the company, which could accept or refuse, relieving Lawson of responsibility. But such a reference to a mere soliciting agent had nothing of the nature of a consent by Lawson to grant the additional insurance; nor could the making of such an application to him be any notice of the insurance afterwards taken in another company.

2. Suitors will not be permitted to plead ignorance of the law that an agent can bind his principal only within the scope of his authority, and that whoever deals with a special agent, constituted for a special purpose, deals at his peril, and is bound to know the extent of his authority. The existence of soliciting agents as a distinct class of insurance agents, with special and limited powers, is as well known as almost any other usage of business. In the first transaction which *Gallatin* had with King, the latter solicited the insurance, wrote up the application, and gave *Gallatin* a receipt signed by King & Lawson in these words: " Received of *Fred. Gallatin* an application for insurance by the *American Insurance Company*, of Chicago, Illinois, on property to the amount of $350, for the term of five years, *subject to the approval of said company;* also an installment note for the payment of premium, as represented on the back of this receipt; also $2.80, first installment." On the back of this receipt was a statement that $2.80 would be due on a specified day of each year; that a printed notice would be forwarded to the assured before each such installment fell due; and that he could transmit the amount as therein directed, at the risk of the company. The receipts for the second and third installments (dated in September, 1875 and 1876, respectively, and being for the only installments paid after the first), were dated at the office in Chicago, and signed by the secretary of the company; and, in the absence of any evidence to the contrary, it must be presumed that the installments were paid directly to the company. These transactions clearly charged *Gallatin* with notice of King's limited and special authority as a mere soliciting agent (Wood on Fire Ins., 652; 2 Kent, 621; Dunlap's Paley, 202; Story on Agency, § 133; May on Ins., § 138); and so far as the claim that the condition of the policy as to additional insurance was waived is based on any act of King, they bring the case clearly within the decision in *Fleming v. Hartford Ins. Co.*, 42 Wis., 616. If King had no power to

bind his principal by contract, he could have no power to waive any conditions of an executed contract. It cannot be seriously questioned that if *Gallatin* dealt with King with knowledge that he was exceeding his authority, the company were not bound; and if the question had been submitted to the jury, they must have found the existence of such knowledge. *Mitchell v. Lycoming Ins. Co.*, 51 Pa. St., 402; *Ins. Co. v. Johnson*, 23 id., 72; *Winnesheik Ins. Co. v. Holzgrafe*, 53 Ill., 516; *Healey v. Imperial Ins. Co.*, 5 Nev., 268; 13 Gray, 79; 6 id., 169; 8 id., 32; *Markey v. Mut. Ben. Ins. Co.*, 103 Mass., 78; *Catoir v. Am. Life Ins. and Trust Co.*, 33 N. J. Law, 487; *Schenck v. Mercer Co. Mut. Fire Ins. Co.*, 24 id., 447; *Barrett v. Union Mut. F. I. Co.*, 7 Cush., 175; *Forbes v. Agawam Mut. F. I. Co.*, 9 id., 470; 24 Mich., 268; *Keenan v. Dubuque Mutual F. I. Co.*, 13 Iowa, 375; *Ayres v. Hartf. F. I. Co.*, 17 id., 176; 25 id., 50; 2 Denio, 65; 18 N. Y., 387; 66 id., 464; 20 id., 52; *Wilson v. Genesee Mut. Ins. Co.*, 14 id., 418; *Bush v. Westchester F. I. Co.*, 63 id., 531. There is indeed a conflict of authority upon the question of the extent to which insurance companies are bound by the acts of their soliciting agents down to the time of the final execution of the contract by the *delivery of the policy;* and it is here conceded that such companies should be bound by all that such an agent does, or knows concerning the risk, down to that time, since that is within the scope of his duties. *Mitchell v. Ins. Co., supra; Rowley v. Empire Ins. Co.*, 3 Keyes, 559; *Anson v. Winnesheik Ins. Co.*, 23 Iowa, 84; *Miller v. Mut. Ben. Life Ins. Co.*, 31 id., 216; *Franklin Life Ins. Co. v. Sefton*, 53 Ind., 380. But here the conflict of authority ceases. When the soliciting agent has fulfilled his mission and exhausted his powers, by procuring a delivery to the applicant of a policy of insurance, courts cannot enlarge and extend his powers by giving him authority thereafter to change the conditions of the policy, and bind the company, un-

til the loss be paid.   But this the circuit court attempted to do by its direction to the jury to find for the plaintiff below.

For the defendants in error, it was argued as follows: 1. It is settled in this state that an insurance agent authorized to issue policies and receive premiums may bind the company by a waiver of any condition of the policy.   *Warner v. Ins. Co.*, 14 Wis., 318; *Miner v. Ins. Co.*, 27 id., 693; *Roberts v. Ins. Co.*, 41 id., 321; *Gans v. Ins. Co.*, 43 id., 108; *Winans v. Ins. Co.*, 38 id., 342.   The only case in this state which makes a distinction between soliciting or surveying agents and recording agents, is *Fleming v. Hartford Ins. Co.*, 42 Wis., 616; and in that case the court held that the plaintiff could not recover, on the ground that he *had notice* that the agent had no authority to make a contract of insurance. Many authorities in other states hold that a mere soliciting agent can neither make a contract of insurance nor waive any condition of the policy, *provided* that either actual or constructive notice of his limited authority is brought home to the assured.   In all these cases it was shown that the assured had either direct notice of the agent's limited authority or knowledge of such facts as a prudent man was bound to regard.   Secret limitations by the company upon the agent's *apparent* authority are not sufficient; but the assured must have notice of such limitations.   Wood on Fire Ins., §§ 383, 390.   In the present case it does not appear that *Gallatin* had any knowledge or notice, at the time the original policy was issued, that King & Lawson had no authority to issue policies; but the company itself led him astray by indorsing on the policy, " King & Lawson, Agents," instead of describing them simply as " Soliciting Agents."   These men kept a regular office or place of business, kept a register of all policies issued by this company, sometimes collected premiums, and in fact transacted a general insurance business; and *Gallatin* had no reason to question their authority as recording agents.   Nor, when he applied for and obtained additional insurance, had he

any notice, direct or indirect, of the limited authority of King; but he exercised due diligence, and was led by the fraudulent acts of Lawson to believe that King had full authority to grant such insurance. · In referring him to King, Lawson must be held to have consented that he should take the additional insurance if King procured it for him; he impliedly authorized King to procure for *Gallatin* such further insurance. And the company is responsible for the acts of its " agent's clerks, or any person to whom he delegates authority to discharge his functions for him." Wood on F. I., § 409. Moreover, the company is estopped by the fraudulent acts of Lawson from denying that it had notice of the additional insurance. Again, King, as soliciting agent, was to receive applications for additional insurance, and transmit them to the company; and this being in the line of his duty, it must be conclusively presumed that he notified the company of *Gallatin's* application. Both through Lawson and through King, therefore, the company is chargeable in law with notice of the additional insurance; and, having failed to return the premium note or notify *Gallatin* that the policy was cancelled, it cannot now defend on the ground of such additional insurance. Wood, § 371, and cases there cited.

[Counsel on both sides also discussed at length the question whether sec. 1, ch. 13 of 1871, and sec. 1977, R. S., render insurance companies doing business in this state liable for the acts of soliciting agents to the same extent as for those of recording agents.]

LYON, J. No consent of the secretary of the insurance company that *Gallatin* might procure other insurance on the insured property, is written on the policy. It is manifest, therefore, that, by the terms of the contract between the parties, the policy in suit is void, unless the company or its agent has done some act, or is chargeable with some omission of duty, which operates as a waiver, or which estops the com-

pany from availing itself of the stipulation that the policy shall be void in case further insurance of the property be obtained without such consent written thereon.

Inasmuch as the judge directed a verdict for the plaintiffs, the judgment cannot be upheld unless the facts constituting such waiver or estoppel are conclusively proved.

As we read the testimony, the undisputed facts proved on the trial are as follows: The policy in suit was issued to *Gallatin* in 1874, and the insurance was for five years. The application for the policy was made to King & Lawson, the local agents of the company. The powers of these agents were limited, by their appointment, to receiving applications for insurance and collecting premiums therefor. That is to say, they were surveying agents only. *Fleming v. Ins. Co.*, 42 Wis., 616. The policy was forwarded to *Gallatin* from the office of the company in Chicago, indorsed at such office, " King & Lawson, Agents."

In 1875, King & Lawson dissolved their copartnership, but both continued to act as agents for the company. King remained a surveying agent; but in May, 1876, Lawson was appointed a recording agent of the company; that is, he was invested by the company with power to make contracts of insurance, and countersign, issue and renew policies on behalf of the company, as well as to receive applications and collect premiums. *Fleming v. Ins. Co., supra.* It does not appear that *Gallatin* had any notice of the character of the agency of King & Lawson, further than it might have been disclosed inferentially by the manner in which they conducted the business. Lawson testified that he was not a recording agent of the company in respect to a class of policies denominated " installment policies; " that his commission does not apply to such policies. The policy in suit is one of this class. But the witness produced his written appointment or commission as agent, and no distinction is made therein between installment and other policies. The power therein conferred is gen-

eral. It may be observed here that the writing is the best evidence, and destroys the force of the conflicting oral testimony.

In the fall of 1876, *Gallatin* applied to Lawson for further insurance on the insured property, and the latter referred him to King. It does not appear that he then applied to King. Early in 1877, and a few weeks before the fire, *Gallatin* again applied to Lawson for further insurance on the property, and was again referred by him to King. Lawson testifies that he referred *Gallatin* to King because he thought there was already enough insurance on the property; but it does not appear that he told *Gallatin* so.

It satisfactorily appears that *Gallatin* thereupon applied to King for the additional insurance, and King sent him to Bennett & Pulling, who were agents at Oshkosh for other insurance companies, and they issued another policy to *Gallatin* on the insured property, in behalf of the " Millville Insurance Company." This policy was issued February 16, 1877.

King occupied the same office with Bennett & Pulling, and had there a copy of Lawson's register of the business of the defendant company — the American, — which contained an entry of the policy in suit. Mr. Pulling, who transacted the business with *Gallatin*, examined the register and saw this entry when he issued the Millville policy.

Within three or four days thereafter, Pulling informed King that he had issued such policy. Pulling's testimony on the subject (which is uncontradicted) is as follows:

" The record that I examined in the *American Insurance Company's* books was the record of this policy; it was not a full copy of it; it was a sort of an abstract. I told Mr. King that I had issued additional insurance on the property; he said nothing; he merely glanced at the register, and sat down and said nothing about it; he glanced at the Millville register. He asked if I had seen a man he had sent there; this was at the time I told him about the policy; I told him I had written it

up in the Millville, and pointed to the register. The whole conversation about the matter was this: he asked, when he came in, if I had seen a man (I think he mentioned the name) that he had sent there for additional insurance; I said, yes, and I said that I had written it up in the Millville, and pointed to the register that lay on the desk; he merely glanced at it, and nodded and sat down. I wouldn't be certain that he mentioned any names."

*Gallatin* was not notified by any person that the policy in suit was rendered invalid by the additional insurance, although he, and the agents of the defendant company, King & Lawson, all resided in Oshkosh until after the fire. The insured property was burned March 25, 1877. King died in the fall of that year.

From the foregoing facts, the inference seems very plain, that *Gallatin* believed, and had the right to believe, that Lawson consented to the further insurance. If Lawson was of the opinion that the property was already fully insured, it was his plain duty to express that opinion to *Gallatin*. He did not do so, but so dealt with *Gallatin* that the latter evidently thought he had his consent, and on the faith thereof incurred the trouble and expense of obtaining the Millville policy. Nor is this all. King, the agent of the defendant company, to whom Lawson referred *Gallatin*, evidently consented to the further insurance; certainly he assented to it soon after it was obtained.

It is argued that the company is not bound by these acts of King, because he had no power to make contracts for it. We are inclined to think that there is nothing in the evidence tending to show that *Gallatin* had notice that King was only a surveying agent. The fact, standing alone, that the application for the insurance was forwarded to the office of the company for approval, to the knowledge of *Gallatin*, is not such evidence. Although that course *must* be pursued by a mere surveying agent, it *may* be pursued by a recording agent;

and it would be unreasonable to charge the insured with notice of the precise character and limits of the agent's authority, merely because he knew that the agent thus forwarded the application for approval.

We, conclude, therefore, that, *quoad* the insured, both Lawson and King must be regarded as general agents of the defendant company; that is, as agents having power to contract for the company. So regarding them, their consent, or the consent of either of them, to further insurance, is binding upon the company, and operates as a waiver of the stipulation in the policy concerning the manner in which consent to further insurance should be given.

On the same grounds, acts *in pais* of either agent, which would estop the agent were he the principal, will in like manner estop their principal — the insurance company — from claiming a forfeiture of the policy under the stipulation.

Had Lawson *expressly* consented to the further insurance, it is conceded that such consent would bind the company and operate as a waiver of the stipulation. Why should not the company also be bound by the consent which may fairly be implied from the manner in which he treated the application of *Gallatin* for further insurance? And why is not consent thus given, which *Gallatin* accepted as consent, and acted upon in good faith, equivalent to express consent? No good reason is perceived why the company is not equally bound in either case. But if the acts of Lawson in the premises do not amount to a waiver, we think they raise an estoppel against the company. Had *Gallatin* applied at the office of the company in Chicago for further insurance, or for leave to obtain it, and had the general officers of the company in charge of its business there referred him to King, their agent, without expressly assenting to or dissenting from the application, and had King consented to further insurance, and directed the insured where to obtain it, making no objection when notified that he had obtained it, no court would hesitate

for a moment to hold that the company was estopped to claim a forfeiture of the policy because the consent of its secretary was not indorsed upon it.

In this transaction Lawson represents the company, and the same results must follow his acts and omissions as would follow the same acts and omissions of its president, secretary, or board of directors.

As regards the acts of King, we are satisfied that he expressly consented to the further insurance, and thereby waived the necessity for obtaining the written consent of the secretary. The grounds upon which we are inclined to hold his consent binding upon the company have already been stated. Holding, however, that the company is bound by the acts and omissions of Lawson, it would not change our judgment were we to hold the opposite views in respect to the acts of King.

Our conclusion is, that the evidence shows conclusively that the plaintiffs were entitled to recover, and hence, that the court properly directed a verdict for them.

The rules of law upon which our judgment is based, have been applied by this court in many cases, some of which will be found cited in the brief of counsel for the defendants in error.

We have determined the appeal without reference to chapter 13, Laws of 1871, sec. 1, which provides that a person performing certain acts in respect to an insurance company "shall be held to be an agent of such company to all intents and purposes." An argument has been based upon this statute to show that one who, before the act, was a mere surveying agent, becomes by the act, as to the public, a general agent; that such is the construction to be given the phrase "to all intents and purposes;" and that under the statute the acts of King would bind the company as effectually as would those of Lawson, or any other recording agent.

On the other hand, it is argued that the purpose of the

statute is to make agents like King amenable, as agents of the companies, to the requirements of the insurance laws of the state, and not to extend the liability of the companies for the acts or omissions of their soliciting or surveying agents. See, also, R. S., sec. 1977.

We do not on this appeal determine the construction of the statute. Allusion is here made to it mainly for the purpose of saying that in the case of *Fleming v. Ins. Co.*, 42 Wis., 616, our attention was not called to it, and it was not considered. It may be that a construction might properly have been given to the statute in that case; but none was given, and the question as to what is the true construction thereof must be considered open for future argument and adjudication.

*By the Court.*— The judgment of the circuit court is affirmed.

RYAN, C. J., dissented.