Renier vs. The Dwelling House Ins. Co.

RENIER, Respondent, vs. THE DWELLING HOUSE INSURANCE COMPANY, Appellant.

*February 26 — April 25, 1889.*

*Insurance against fire: Agency: Waiver of conditions of policy: Incumbrances: Proofs of loss.*

1. Under sec. 1977, R. S., the local or soliciting agent of an insurance company may, before a contract of insurance has become complete and binding, waive conditions of the policy as to incumbrances then existing. *Hankins v. Rockford Ins. Co.* 70 Wis. 1, distinguished.

2. A soliciting agent, with knowledge of incumbrances upon the property to be insured, filled out an application stating that there were none, and procured it to be signed by the owner, who was ignorant in such matters. The agent further stated, on the back of the application, that he had personally inspected the property, that he recommended the risk, and that he was satisfied that the answers in the application were correct. *Held,* that this was a waiver of a condition in the policy avoiding it in case the property was incumbered.

3. Where the general agent, with knowledge of the incumbrances, recognized the policy as a subsisting contract and invited proofs of a loss, which were furnished accordingly, the company is estopped from asserting the original invalidity of the policy by reason of such incumbrances.

4. A provision in a policy that there should be no waiver of its conditions unless made "in express terms and in writing signed by the president or secretary of the company," is ineffectual to prevent a waiver by the general agent of a foreign insurance company of the requirement that proofs of a loss should be furnished within a certain time.

APPEAL from the Circuit Court for *Brown* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action is for loss by fire upon a policy of insurance executed January 11, 1887, and insuring the property described for five years from that date in the aggregate sum of $3,600, being upon a dwelling-house and barn and the

property in and about the same. The fire occurred about 1 o'clock on the morning of August 19, 1887, and the amount of property destroyed is alleged to have been, in the aggregate, $3,906.18, and judgment was demanded for $3,225.66, with interest from the time of the fire. The answer, in effect, charged that the fire and damages were caused by the wilful act and procurement of the plaintiff; also several forfeitures under the policy, the failure to make proofs as required, and attempts to defraud and deceive the defendant in pretended proofs furnished, and consequent forfeitures; and that no recovery could be had under the policy.

The policy contained the following provisions: "Reference is made to application under policy 150,994, which is a part of this policy." " In case the interest of the assured in said property is not the sole, absolute, and unincumbered ownership thereof, both at law and in equity, this company shall not be liable to pay to the assured by virtue of this policy any sum exceeding the actual cash value of the interest of the assured at the time of the loss, after deducting from the actual cash value of said property the amount and value of all outstanding rights, interests, and incumbrances thereon." " By the acceptance of this policy the assured covenants that the application herefor shall be and form a part hereof and a warranty by the assured; and the company shall not be bound by any act or statement made to or by any agent, unless inserted in this contract." " If the property, or any part thereof, shall be sold, conveyed, incumbered by mortgage or otherwise, or any change take place in the title, use, occupation, or possession thereof whatever, or if foreclosure proceedings shall be commenced, or if the interest of the assured in said property, or any part thereof, now is or shall become any other or less than hereon, or if the buildings or either of them stand on leased ground or land of which the assured

has not a perfect title, or if this policy shall be assigned without written consent hereon, then, and in every such case, this policy shall be absolutely void." "Any fraud or attempt to defraud or deceive on the part of the assured, and any misrepresentation in the proofs or examination as to loss or damage, shall forfeit all claims under this policy." "All persons having a claim under this policy shall forthwith give written notice of the loss or damage, and within thirty days furnish proofs thereof, signed and verified by the claimants," etc.; "and until such proofs, plans, specifications, and certificates shall be furnished, and such examination had and award made as aforesaid, the claim shall not be due or payable." "No act or omission of the company, or any act of its officers or agents, shall be deemed, construed, or held to be a waiver of a full and strict compliance with the foregoing provisions of the terms and conditions of this policy, except it be a waiver or extension in express terms and in writing, signed by the president or secretary of the company." "This policy is accepted upon the foregoing agreements, covenants, and conditions."

On the back of the policy is endorsed: "ELIE MARTIN, Agent, Green Bay, Wisc." On the back of the policy (Exhibit A) is a partly written and partly printed copy of an application for insurance, filled out by the defendant from the original application, in which appears, in the body thereof, the following question, "(5) Is your property above described [the property specified in the policy] incumbered, by what, and to what amount, and to whom?" and the following answer thereto: "(5) No." This application also provides: "If applicant is a married women, her husband must sign application with her." At the end of said application is the following: "The foregoing is my own statement, and is a correct description of the property to be insured, on which insurance will be predicated. I hereby agree that the above-described property, during the

continuance of the policy to be issued on this application, shall be and remain in all respects as above set forth, and that the foregoing shall be deemed and taken to be promissory warranties during the entire life of said policy." Exhibit T — policy of insurance issued by defendant to plaintiff pursuant to original application, and dated December 3, 1886,— is the policy No. 150,994, mentioned in Exhibit A, and is the first of the two policies issued by defendant to plaintiff, and was surrendered when Exhibit A was issued.

Upon the trial the jury returned a special verdict to the effect that the defendant waived the provisions of the policy requiring proofs of loss to be furnished within thirty days; that the plaintiff informed the defendant's soliciting agent, Elie Martin, at or before the time when the policy in question was issued, what mortgages were on the land upon which the insured building stood, and Martin informed the defendant before September 14, 1887, what mortgages were on said land; that the fire was not caused by the wilful act, consent, or procurement of the plaintiff; that the plaintiff did not in her proofs of loss, wilfully and intentionally, and with the intent to deceive or defraud the defendant, represent that she was the owner of any property destroyed by the fire, which did not in fact belong to her, nor that the value or quantity of any property so destroyed or injured by the fire was greater than it actually was in fact; that the dwelling-house was wholly destroyed by fire; that the horses mentioned in the chattel mortgage given to secure the purchase price of the binder were the property of the plaintiff at the time of the fire; that the value of the personal property destroyed by the fire was $1,970.66; that the plaintiff informed the defendant's soliciting agent, Martin, at the time he took her application for insurance, of the chattel mortgage for $130 on the horses.

Upon the records, files, and special verdict the court there-
upon ordered judgment in favor of the plaintiff and against
the defendant for $3,144.21, with interest from December
15, 1887, and judgment was thereupon entered accordingly
for $3,272.59. From that judgment the defendant ap-
peals.

For the appellant there was a brief by *Vroman & Sale*,
and oral argument by *Chas. E. Vroman.*

For the respondent there was a brief by *M. T. Parker*,
attorney, and *John H. Brennan*, of counsel, and a separate
brief by *Geo. G. Greene*, of counsel, and the cause was
argued orally by *Mr. Brennan* and *Mr. Greene.*

CASSODAY, J. It appears from the undisputed evidence
that November 20, 1886, the defendant's local soliciting
agent residing at Green Bay,— Elie Martin,— called at the
plaintiff's residence and solicited insurance on her farm
buildings and personal property; that such insurance was
then and there agreed upon; that the plaintiff and her hus-
band then and there signed the application therefor men-
tioned above, and the same was thereupon forwarded to the
defendant's home office; that December 3, 1886, a policy
(No. 150,994) running for five years was issued to the plaint-
iff; that such policy was precisely like the one of which
the substance is set forth above, except as to the dates,
amount, and some new items; that a copy of such appli-
cation was printed and written on the back of that policy;
that the plaintiff held that policy until December 27, 1886,
when she requested such soliciting agent to increase the
amount of insurance upon the house and barn and sundry
articles of personal property in the aggregate amount of
$1,000, which was done by sending such policy to said home
office, and receiving therefrom, in lieu thereof, another
policy, the material portions of which are given above;
and that the same was issued January 11, 1887, upon such

former application. At the time of such application for such increase there were two mortgages upon the land upon which the buildings were situated,— one of $100, to Denis, and the other of $155, to Francois; and also a chattel mortgage of $130 upon some of the personal property insured, but which last mortgage was paid before the fire.

1. It is urged that the policy in question was void in its inception under one of the conditions thereof quoted above, by reason of the existence of such unpaid mortgages upon the property at the time of such application and the issuance of the policy, contrary to the representations and warranties contained in such application. The jury found, as a matter of fact, that the plaintiff informed the defendant's soliciting agent of the existence of each of those mortgages at or before the time when the policy in question was issued. There is evidence to support such finding. In fact it appears that the plaintiff is ignorant in such matters, and that such agent visited the premises, made out the application, and wrote the plaintiff's answers therein, and then she signed it at his request. He also stated on the back of the application, in effect, that he had lately inspected the property insured personally, that he fully recommended the risk as free from all moral or financial hazard, and that he was satisfied that the answers and values given therein were correct. It is claimed that such action of the agent, with knowledge of the existence of the mortgages, was binding upon the defendant, and a waiver of such condition of the policy against such incumbrances. Such seems to be substantially the rule frequently sanctioned by this court in respect to agents authorized to take such risks. *Miner v. Phœnix Ins. Co.* 27 Wis. 693; *McBride v. Republic F. Ins. Co.* 30 Wis. 567; *Wright v. Hartford F. Ins. Co.* 36 Wis. 522; *Mechler v. Phœnix Ins. Co.* 38 Wis. 665.

2. It is claimed by the learned counsel for the defendant, however, that such written policy and application were

conclusive upon the plaintiff, and hence that such parol evidence was improperly admitted. This is upon the theory that, by accepting the policy with a copy of such application, the assured became bound by the two together, as constituting the written contract, by the terms of which the company was not to "be bound by any act or statement made to or by any agent, unless inserted in the contract." Moreover, it is claimed that by the terms of the contract such soliciting agent was never authorized to make contracts of insurance nor to issue policies, but merely to receive applications and forward them to the company. But, under our statute, whoever solicits insurance on behalf of any insurance company, or transmits an application to such company, or a policy to or from such corporation, or collects or receives any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business for such company, must be deemed and held to be an agent of such corporation to all intents and purposes in each of the several things mentioned. Sec. 1977; *Hankins v. Rockford Ins. Co.* 70 Wis. 4. The local agent here having performed those several acts in behalf of the company and with its authority, the latter cannot disclaim his agency in the doing of anything necessarily implied in the specific acts thus authorized. *Ibid.* We must therefore hold that the local agent, under the authority given and the statute cited, had the implied authority to waive any answers in the application or stipulation in the policy as to the then condition of the property or the existence of the mortgages, and by accepting the premium and issuing the policy the company ratified such waiver and estopped itself from disclaiming such agency. It is wholly unlike the attempt of such local agent without authority to waive conditions in a policy subsequently to the time when the contract of insurance has become complete and binding upon both parties, as in *Hankins v. Rockford Ins. Co., supra.* In other words,

under our statute an insurance company cannot, through the aid of a local agent, secure a contract of insurance and the premium therefor, and at the same time disclaim the authority of such agent to waive stipulations in such contract respecting the then existing conditions of or incumbrances upon the property insured to the knowledge of such agent.

3. Besides, the jury found that defendant was informed by its local agent before September 14, 1887, of the existence of the mortgages upon the land; that is to say, its general agent was so informed. The evidence seems to be sufficient to support such finding. With such knowledge of the existence of the mortgages, the general agent of the company on the day last named wrote the plaintiff's husband in answer to a letter from him, mailed a week before, in relation to the loss in question and proofs of the same, recognizing the policy as a subsisting contract, and in effect inviting proofs of loss as therein required. This being so, and the plaintiff having in pursuance of such invitation furnished such proofs, the defendant is estopped from claiming that such contract was void in its inception by reason of the existence of such mortgages. *Cannon v. Home Ins. Co.* 53 Wis. 585; *Oshkosh G. L. Co. v. Germania F. Ins. Co.* 71 Wis. 458; *Hollis v. State Ins. Co.* 65 Iowa, 454; *Wilson v. Minnesota F. M. F. Ins. Ass'n,* 36 Minn. 112; *Carrigan v. Lycoming F. Ins. Co.* 53 Vt. 418.

4. It is claimed that the plaintiff cannot recover in this action by reason of her failure to furnish proofs of loss within the thirty days named in the policy. It is admitted that August 23, 1887, the defendant's local agent wrote its general agent, in effect informing him of a heavy loss under the policy in question by reason of a fire having occurred at 1 o'clock in the morning of August 19, 1887, whereby the plaintiff claimed everything was lost, even to one team of horses; that another agent at Green Bay had been after

Renier vs. The Dwelling House Ins. Co.

the plaintiff, soliciting the collection of her claim, etc.; that she was just going to the office of such other agent to make her proof when he met her and informed her that he would notify the company at once, etc., upon which she withdrew her case from the hands of such other agent; that he suggested therein the propriety of sending a shrewd adjuster to attend to the loss at once, and before the getting of advice from the usual run of lawyers in such cases, and before manufactured proof should be made; that September 7, 1887, the plaintiff's husband wrote and sent to the company a list of the items she claims to have lost by the fire, August 18, 1887; and that, in answer to that letter, the general agent replied, in effect, that his information was that the fire was of a different date, and suggested, among other things, how the proofs should be made if she had sustained such loss. The trial court submitted to the jury the question whether the general agent did not know that such list was intended by the plaintiff as proofs of loss, and whether such general agent did not intend and expect that such answer would come to her attention and induce her to make proofs and send them forward, knowing at the same time that the time remaining of such thirty days was so short that in the ordinary course of business it was impossible for her to get them around in that time, and whether he did not thereby intend to waive the furnishing of such proofs in the exact time required by the policy; and also whether the defendant waived the furnishing of such proofs within the time required, by the conduct mentioned of the defendant's local agent, with the knowledge and approval of such general agent. The jury found that the defendant did so waive such requirement of proofs of such loss within the thirty days named. The contention is that, under one clause of the policy quoted above, there could be no such waiver by any officer or agent of the company, because no such " waiver or extension in express terms and in writing,

signed by the president or secretary of the company," as therein provided, was ever made. The court instructed the jury, in effect, that the local agent had no such authority, and that any action by him in that regard, without the knowledge or approval of somebody higher in authority, would be ineffectual as against it. This is within the ruling in *Hankins v. Rockford Ins. Co.* 70 Wis. 1. But the clause of the policy referred to is claimed to be broad enough to include the general agent, and in fact every officer and agent of the company, except the president and secretary,— and even them, unless the act be in express terms and in writing, signed by one of them. We must hold, however, that such attempted restrictions upon the power of the company or its general officers or agents, acting within the scope of their general authority, to subsequently modify the contract and bind the company in a manner contrary to such previous conditions in the policy, are ineffectual. Especially is this true in respect to a foreign insurance company, whose officers are practically inaccessible to the assured. These views are in harmony with the repeated rulings of this court. *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108; *Am. Ins. Co. v. Gallatin*, 48 Wis. 36; *Shafer v. Phœnix Ins. Co.* 53 Wis. 361.

The same principle has been sanctioned in well-considered opinions of other courts. *Lamberton v. Connecticut F. Ins. Co.* (Minn.), 39 N. W. Rep. 76; *Willcuts v. Northwestern M. L. Ins. Co.* 81 Ind. 308; *Steen v. Niagara F. Ins. Co.* 89 N. Y. 326; *Richmond v. Niagara F. Ins. Co.* 79 N. Y. 230; *Eastern R. Co. v. Relief F. Ins. Co.* 105 Mass. 570; *American L. Ins. Co. v. Green*, 57 Ga. 469; *Westchester F. Ins. Co. v. Earle*, 33 Mich. 143. In the language of the Minnesota court in the case cited, " a contracting party cannot so tie his own hands, so restrict his own legal capacity for future action, that he has not the power, even with the assent of the other party, to bind or obligate himself by his further

Renier vs. The Dwelling House Ins. Co.

action or agreement, contrary to the terms of the written contract." Of course an insurance company, and especially a foreign insurance company, in making contracts of insurance, and adjusting, settling, and paying losses, must act through its agents, if at all. To hold that in such negotiations between such general agents and the assured the latter is bound, but that in the same transaction the company — the agents' principal — cannot be bound, by reason of having incapacitated itself and them by previous stipulations from agreeing to anything contrary to the conditions contained in the original contract, is, under most policies, in effect, to hold that there is no mutuality in such negotiations, and that the powers of such general agents are limited to the obtaining of premiums and then defeating the enforcement of the policies upon which they were paid.

5. Upon the record in this case we do not think there was any error — at least, no material error — in allowing testimony as to the amount of clothing generally possessed by Belgian families. It related to the standing and condition of a class of persons of which the plaintiff was one, and really as to a matter upon which the evidence was undisputed. Under the circumstances, we do not think the jury could have been misled by it. Many of the exceptions are extremely technical in their nature. The defendant's agents manifestly believed that the loss was the result of intentional misconduct of the plaintiff or some of her family. The defense was in part upon that ground. With such belief, the defendant properly sought to avail itself of any and all supposed available exceptions. But the case having been fairly tried, and the jury having found, in effect, that the fire was not caused by any wilful act, consent, or procurement of the plaintiff, and that the proofs of loss were made in good faith, such findings must be received by this court as verities in the case. These questions, going to the merits, thus determined, the judgment should not be dis-

turbed by reason of mere technical exceptions not affecting the substantial rights of the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 42 N. W. Rep. 208.— REP.