Dick and another, Respondents, vs. Equitable Fire & Marine Insurance Company, Appellant.
Dick and another, Respondents, vs. Merchants' Insurance Company, Appellant.

*December 17, 1895 — January 7, 1896.*

*Insurance against fire: Breach of condition of policy: Waiver of forfeiture: Agent's knowledge, when imputed to insurer: Powers of adjuster: Evidence: Judgment when companies are joined.*

1. Knowledge, by the local agent who issued a policy, of facts which show that a condition thereof has been broken is imputed to the company, so that its subsequent conduct assuming the policy to be still valid and in force will constitute a waiver of the forfeiture,

especially where the insured is subjected thereby to delay or expense.

2. Where the adjuster sent by a company to investigate the circumstances and ascertain the amount of a loss has been indued with apparent authority to require the insured to furnish a carpenter's estimate of the loss and damage, such a requirement by him, after the company has knowledge of facts showing the breach of a condition of the policy, constitutes a waiver of the forfeiture.

3. Such a waiver is not prevented by a provision of the policy that the company "shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination therein provided for."

4. Nor is such a waiver prevented by a provision that no officer, agent, or other representative of the company shall have power to waive any provision or condition of the policy except such as by the terms of the policy may be the subject of agreement indorsed thereon or added thereto, and that as to such provisions and conditions there shall be no waiver unless it shall be written upon or attached to the policy, and that no privilege or permission affecting the insurance shall exist or be claimed by the insured unless so written or attached.

5. In an action upon a policy which the company claimed had been invalidated by foreclosure proceedings, the insured was asked, on cross-examination, "Didn't you think at the time that the company ought to be informed of the fact that there was a judgment of foreclosure there?" He answered, "I didn't see any need of it, for I knew that Jackson [the local agent] knew it." *Held*, that it was not error to refuse to strike out such answer as not responsive.

6. The adjuster, after having required the insured to furnish a carpenter's estimate, voluntarily paid for it himself. The insured claimed that this was done from afterthought, to avoid the effect of the requirement as a waiver; and on his cross-examination the adjuster was asked, against objection, if he did not know at the time that, in case he had put the insured to trouble and expense in getting the estimate, while he had knowledge of the foreclosure, that would make the policy good. He answered that he did know that such was the law, but that he had no knowledge of the foreclosure. *Held*, that as the testimony was not prejudicial to the company the error, if any, in its admission was not material.

7. Evidence that a witness had heard plaintiff's attorney say to another person that he had advised the insured, if the company

Dick and another vs. Equitable Fire & Marine Ins. Co.

wanted an estimate, "not to let the grass grow under his feet until he got it," was mere hearsay and was not admissible as tending to show that the insured and his attorney were "working for a waiver."

8. Under ch. 235, Laws of 1893, a separate judgment was properly entered against each of two insurance companies who had been joined as defendants, for the sum for which it was liable, with its proportionate share of the costs.

APPEALS from judgments of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

The action is upon a policy of fire insurance issued by the defendants, jointly, under the name "The Rhode Island Underwriters' Association," to the plaintiff *Dick*. *Dick* was the owner of the property insured, and *Powell* held a mortgage upon it. The loss, if any, was made payable to *Powell* "as her mortgage interest may appear." The policy contained a provision that it should be void "if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of any sale of any property covered by this policy, by virtue of any mortgage or trust deed." The mortgage was foreclosed, with the knowledge of the insured. Afterwards the property insured was destroyed by fire, and notice and proofs of loss were given. An adjuster was sent to adjust the loss. He required the plaintiff to supplement his proofs of loss by what was called a "carpenter's estimate" of the loss and damage. This the plaintiff furnished at some trouble and cost.

The defense to the action was that by the foreclosure proceedings the policy had become forfeited and void. This defense was met by the contention on the part of the plaintiff that the forfeiture, if any, had been waived by the defendants by requiring further proof of loss. The contention was mainly upon the question whether there had been such waiver. The evidence was conflicting.

There was a special verdict. The jury found that the defendants' local agents who issued the policy knew of the

foreclosure proceedings before the loss occurred; that the adjuster knew of them before he required the carpenter's estimate; that the estimate was procured by the plaintiff and at his expense; and that the property was totally destroyed. The plaintiff had judgment against each of the defendants for an equal one-half of the loss and one half of the costs. Both defendants appeal. Both appeals were heard together on one case and briefs.

For the appellants there was a brief by *Doolittle & Shoemaker*, and oral argument by *L. A. Doolittle*. They contended, *inter alia*, that neither the special agent nor the local agent could waive the forfeiture except in the manner provided in the policy, namely, by writing the waiver upon the policy or upon some paper attached to it. *Moore v. Hanover F. Ins. Co.* 141 N. Y. 219; *Quinlan v. Providence W. Ins. Co.* 133 id. 356, 363, 364; *Marvin v. Universal L. Ins. Co.* 85 id. 278; *Warren v. Phœnix Ins. Co.* 19 N. Y. Supp. 990; *Gray v. Guardian Ass. Co.* 82 Hun, 380; *Weed v. London & L. Ins. Co.* 116 N. Y. 106, 117; *Hollis v. State Ins. Co.* 65 Iowa, 454; *Ruthven v. Am. F. Ins. Co.* 60 N. W. Rep. 663; *Parker v. Rochester G. Ins. Co.* 162 Mass. 479; *Pettengill v. Hinks*, 9 Gray, 169; *Hankins v. Rockford Ins. Co.* 70 Wis. 1; *Renier v. Dwelling House Ins. Co.* 74 id. 89; *Harrison v. German-Am. F. Ins. Co.* 67 Fed. Rep. 577; *Phenix Ins. Co. v. Bowdre*, 67 Miss. 620; *Dibbrell v. Georgia Home Ins. Co.* 110 N. C. 193; *Knudson v. Hekla F. Ins. Co.* 75 Wis. 198; *Carey v. German Am. Ins. Co.* 84 id. 80; *Burr v. German Ins. Co.* id. 76.

*W. P. Bartlett*, for the respondents.

NEWMAN, J.     It is not questioned by the plaintiffs, but is conceded that the foreclosure proceedings rendered the policy of insurance voidable, at the option of the defendants. But it is contended by the plaintiffs that, in the exercise of that option, the defendants elected to waive the forfeiture

and to treat the policy as still valid, and so are now estopped to urge the forfeiture. It is well settled in this state that conduct on the part of insurance companies, after knowledge of the forfeiture of a policy, which assumes the policy to be still valid and in force, especially if it subjects the insured to delay or expense, is a waiver of the forfeiture and estops the company to urge that defense to an action on the policy. *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108; *Cannon v. Home Ins. Co.* 53 Wis. 585; *Oshkosh Gas Light Co. v. Germania F. Ins. Co.* 71 Wis. 454; *Renier v. Dwelling House Ins. Co.* 74 Wis. 89. This principle of the law is not questioned by the defendants. But they deny knowledge of the foreclosure proceedings which operated the forfeiture, and urge that the evidence given on the trial is insufficient to establish that fact. But in *Gans v. St. Paul F. & M. Ins. Co.*, *supra*, it is held that knowledge of facts which show that a condition of the policy has been broken, by the local agent who issued the policy, is imputed to the company as knowledge of the same fact. And the testimony, clearly, is sufficient to sustain the finding of the jury that the local agent had knowledge. In that case it is unimportant whether the adjuster had actual knowledge or not.

It is also urged that the evidence is insufficient to show that the agent who was sent to investigate the loss had power to bind the company by a waiver of the forfeitures. The agent disclaims such power. He denominates himself a " special agent," and describes himself as having only limited powers. But evidently he was sent by the defendants to investigate the circumstances and ascertain the amount of the loss. His real authority covered all that might be advantageous and appropriate in ascertaining the loss. The plaintiff was required, by the policy, to " furnish, if required, verified plans and specifications of any building, fixtures, or machinery destroyed or damaged." Apparently, the agent sent had the power to require such plans and specifications

to be furnished by the assured.   The carpenter's estimate of
the loss and damage was evidently such a paper.   It was, at
least, within the apparent scope of the agent's authority to
demand such carpenter's estimate.   The defendants had in-
dued him with such apparent authority.   It was, in legal
effect, the demand of the defendants.   They are bound by
it, and by the legal consequences which flow from it, al-
though it may have been intended that his authority should
be more limited.   It was expressly held in *Oshkosh Gas Light
Co. v. Germania F. Ins. Co.* 71 Wis. 454, that an adjusting
agent has power to bind the company by acts *in pais* which
operate as an *estoppel* to insist upon a forfeiture of the policy.
See, also, *American Ins. Co. v. Gallatin*, 48 Wis. 36; *Alex-
ander v. Continental Ins. Co.* 67 Wis. 422.   While a mere
local agent, as such, may have no power to bind the com-
pany by the waiver of a forfeiture, still the company may
be bound by the act of any agent who is authorized to do
the act which constitutes a waiver.

The case is not within that provision of the policy which
provides that " these companies shall not be held to have
waived any provision or condition of this policy, or any for-
feiture thereof, by any requirement, act, or proceeding on
their part relating to the appraisal, or to any examination
herein provided for."   The carpenter's estimate did not re-
late to an appraisal, or to the examination provided for.

The policy contained this provision:   " This policy is made
and accepted subject to the foregoing stipulations and con-
ditions, together with such other provisions, agreements, or
conditions as may be indorsed hereon or added hereto; and
no officer, agent, or other representative of these companies
shall have power to waive any provision or condition of this
policy, except such as, by the terms of this policy, may be
the subject of agreement indorsed hereon or added hereto,
and, as to such provisions and conditions, no officer, agent,
or representative shall have such power, or be deemed or

held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached." In *Renier v. Dwelling House Ins. Co.* 74 Wis. 89, it was held that "such attempted restrictions upon the power of the company or its general officers and agents, acting within the scope of their general authority, to subsequently modify the contract and bind the company in a manner contrary to such previous conditions in the policy, are ineffectual."

Errors are alleged in the admission and rejection of evidence. The court admitted testimony, over the defendants' objection, of a conversation which the witness overheard, before the fire, between the defendants' local agent and the plaintiff. In substance it was that the local agent, Jackson, said to the plaintiff, "I am afraid you will lose your house and lot by the foreclosure proceedings that have been commenced." The plaintiff replied, "I don't think I will lose it, for I have a year to redeem in." The object was to prove that the local agent had knowledge of the foreclosure. The defendants objected to this testimony on the ground that notice to the local agent, of the foreclosure proceedings, is not notice to the company. The objection on that ground is not tenable. *Gans v. St. Paul F. & M. Ins. Co.* 43 Wis. 108.

Defendants' counsel asked the plaintiff *Dick*, on cross-examination, "Didn't you think at the time that the company ought to be informed of the fact that there was a judgment of foreclosure there?" The plaintiff answered, "I didn't see any need of it, for I knew that Jackson knew it." The defendants moved to strike out this answer as not responsive to the question. It is not clear that the answer is not responsive to the question. The question called for nothing material to defendants' case. It is not obvious what

the counsel expected to elicit by it. The question itself
seemed to imply some criticism upon the plaintiff for his
failure to notify the company directly. The answer, very
naturally, stated his reason for not having done so. The
question seemed to call for some explanation. The answer,
in substance, is, "The defendant already knew it." It is
not evident that that answer was not responsive to the ques-
tion. If the defendants did not desire an explanation of
this kind, the question could have been put in different form,
or, without detriment to the defendants' case, omitted alto-
gether. It is sometimes safer, in practice, not to ask irrele-
vant questions in cross-examination.

It appears that after the plaintiff had procured the car-
penter's estimate, and had delivered it to the adjuster, the
adjuster voluntarily, and without consulting the plaintiff,
paid the maker for it. He testified that, at the time when
he required it from the plaintiff *Dick*, he had informed *Dick*
that it should be procured at his expense, which *Dick* de-
nied. This was one of the issues tried. It was claimed by
the plaintiffs that this was done from mere afterthought,
for the purpose of avoiding the effect of the demand for
the estimate as an estoppel. So, on cross-examination, the
adjuster was asked if he did not know at the time when he
paid for the estimate that, in case he had put the plaintiff
to trouble and expense in getting it, while he had knowl-
edge of the foreclosure, that would make the policy good.
He answered, in effect, that he did know that such was the
law, but that he had no knowledge of the foreclosure. Fur-
ther questions of similar import were pressed, and simi-
larly answered. This was all under objection that the ques-
tions were "incompetent, irrelevant, and immaterial." The
materiality of this line of questions and answers is not very
evident or cogent. But possibly it may be relevant as hav-
ing some inferential or argumentative bearing upon the
plaintiff's contention that the payment by the witness was
the result of afterthought, in anticipation of the conse-

quence of his demand for the estimate. At least, it is not perceived that the defendants were injured by this testimony, as it seems to be rather favorable to defendants' side of the contention.

The defendants' attorney asked one of the defendants' witnesses this question: "Did you hear him [Mr. Bartlett, plaintiffs' attorney] say to your father that he advised *Mr. Dick* [the plaintiff] that, if the insurance company wanted an estimate, not to let the grass grow under his feet until he got it?" This and other questions of the same general character were objected to as "incompetent, irrelevant, and immaterial," and excluded. This is alleged for error, because it is claimed that this class of testimony would tend to show that the plaintiff and his attorney "were working for a forfeiture." ("Waiver" is probably the word intended.) But the defendants could scarcely hope that the merest hearsay evidence would be deemed competent for proving it, or that the fact was of much importance if fully proved.

It is claimed to be error that two separate judgments, one against each defendant for the sum for which it was liable, with its proportionate share of costs, were taken. This form of judgment seems to be required by ch. 235, Laws of 1893. It provides that "all insurance companies interested in the loss" may be joined as defendants, and that "a separate judgment shall be entered against each insurance company, for the amount of the verdict which may be rendered against such insurance company, together with its proportion of the costs in the suit."

The defendants also urge that the evidence is insufficient to support the verdict as to the amount and entireness of the loss. There is evidence which seems to show, with sufficient certainty, that the building was, for all practical or useful purposes, totally destroyed. *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 67.

*By the Court.*— The judgments of the circuit court are both affirmed.