BENNETT, Respondent, vs. BEAVERS RESERVE FUND FRATER-
NITY, Appellant.

*November 20—December 8, 1914.*

*Life insurance: Assessment policy: Suicide: Forfeiture: Waiver: Es-
toppel: Acceptance of assessment after death.*

1. Where an assessment was fully earned and was due, so that there
was an absolute liability for its payment, before the death of a
person insured under an assessment policy, acceptance of such
assessment after his death did not waive a forfeiture occurring
after the assessment became due, nor estop the insurer to insist
upon such forfeiture.
2. Thus, where an assessment was fully earned and became due so
that the liability to pay it was absolute on the first day of the
month, although payment might be made without penalty at any
time before the end of the month, and thereafter, during the
month, the insured took his own life, subsequent acceptance of
such assessment by the insurer with full knowledge of the cause
of death did not operate as a waiver or an estoppel with respect
to a forfeiture resulting from such suicide.

APPEAL from an order of the circuit court for Grant
county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Action to recover on a policy of life insurance issued on
the assessment plan. The policy contained this language:

"If said member shall, within five years from the date of
this benefit certificate, voluntarily or involuntarily, take his
own life, whether at the time sane or insane, or shall within
five years from the date of this benefit certificate die from the
effects of an attempt to take his own life, then, and in either
such event, this benefit certificate shall become null and void
and of no effect."

The constitution and by-laws were included in the policy
and provided, in reference to execution by the board of direct-
ors of the power to make assessments, that in levying an as-
sessment the board should state the month for which the same
was levied, and it should become due on the first day of such
month and be paid on or before the last day thereof. About

March 3, 1911, an assessment was duly levied, stating that it was for the month of April, 1911. General notice thereof to all policy-holders was duly given, which stated this:

"You will, therefore, each take notice that you are required to pay such assessment according to the terms of your benefit certificate and the by-laws of the Fraternity to the secretary of your colony before the first day of May, A. D. 1911. Any beneficial member not so paying said assessment will stand suspended, and during the period of such suspension the certificate of such member will be null and void."

After the date at which the assessment became due according to the by-laws, but before expiration of the time limited by the notice for payment to avoid the penalty of suspension, the assured committed suicide. During such time but after the suicide, *Mrs. Bennett* paid the assessment to the defendant and it retained the same with full knowledge of the cause of death.

For the appellant there were briefs by *Clancey & Loverud,* and oral argument by *J. M. Clancey.* They cited, among other cases, *Fulton v. Stevens,* 99 Wis. 307, 74 N. W. 803; *Joliffe v. Madison Mut. Ins. Co.* 39 Wis. 111, 118; *Hill v. Farmers' Mut. F. Ins. Co.* 129 Mich. 141, 88 N. W. 392; *Calkins v. Angell,* 123 Mich. 77, 81 N. W. 977; *Provident Mut. R. Asso. v. Pelissier,* 69 N. H. 606, 45 Atl. 562; *Mandego v. Centennial Mut. L. Asso.* 64 Iowa, 134, 17 N. W. 656, 19 N. W. 877; 29 Cyc. 99; 21 Am. & Eng. Ency. of Law (2d ed.) 288.

*S. H. Taylor,* for the respondent.

MARSHALL, J. This case must turn on the question of whether there was an absolute liability for the assessment which had not been paid at the time of the suicide.

Confusion with resulting injustice in cases of this sort will occur from want of appreciation of the distinction between acceptance by the insurer of money from the assured to con-

tinue the policy which he might decline to pay at his pleasure and suffer only the penalty of forfeiture, and acceptance or collection of money from the assured on account of an absolute liability created and persistent until discharged, regardless of any forfeiture after such liability became fixed.   In the former situation acceptance of the money would be inconsistent with insisting upon the forfeiture, in the latter it would not.

All cases of waiver and estoppel in favor of continued liability under a policy of insurance, are grounded upon the insurer doing some act inconsistent with insisting upon a termination of the policy.   Such unequivocal inconsistent act may be characterized by elements of estoppel, as by putting the policy-holder or claimant thereunder to some expense, as in *Cannon v. Home Ins. Co.* 53 Wis. 585, 11 N. W. 11; *Oshkosh G. L. Co. v. Germania F. Ins. Co.* 71 Wis. 454, 37 N. W. 819; *Dick v. Equitable F. & M. Ins. Co.* 92 Wis. 46, 65 N. W. 742, or by merely the element of waiver as in *Palmer v. St. Paul F. & M. Ins. Co.* 44 Wis. 201, and similar cases. When there is no treatment of the insurance contract as having one status and then a change of position to the prejudice of the policy-holder or claimant thereunder by treating the contract as having a different status, the doctrine of waiver or estoppel, so often applied in actions of this sort, has no application whatever to defeat the effect of a forfeiture.

The foregoing was very clearly illustrated in *Joliffe v. Madison Mut. Ins. Co.* 39 Wis. 111, where it was held that receipt and acceptance after the breach of a condition, working a forfeiture, of money which is due and collectible absolutely, without regard to any forfeiture, is not a waiver of such forfeiture.   A distinction was there drawn between a case of receipt and payment upon a policy after the happening of a loss, covering a period within which the loss accrued, and receipt of a payment after loss to discharge a liability which

existed irrespective of continuance of the policy. The court observed as to the latter situation:

"It may be here observed, that the acceptance by the defendant of such premium after the loss, and even after the defendant had notice of the loss, is of no importance. Such assessment was due and payable absolutely, whether the policy was forfeited or not. . . . The defendant waived nothing by accepting that which, in any event, was its due."

The court decided that in any case acceptance on an assessment policy after a loss shall have accrued of a payment wholly earned before the loss, does not waive a forfeiture happening after creation of the absolute liability. Why the matter in question does not fall within the above stated principle is not perceived. The logic of such contracts of insurance is that each assessment is for a specific period and is fully earned when the period shall have expired. Upon such assessments the assurer depends for the fund to pay its liabilities and, in the main, liabilities existing at the time of the assessment. They are recoverable in the main solely for the benefit of the owners of existing claims. For that reason, as a rule, a considerable length of time is provided to enable the assured, after receiving due proof of loss, to accumulate under the assessment plan money to discharge it. That feature is present in the contract in question. There was a reserve fund and it was provided that ten per cent. of all assessments should be covered into such fund; but that was, evidently, in the main, to provide against deficiencies on account of unpaid assessments. The whole scheme embodied in the contract contemplated liability for carrying the risk for the time mentioned in the assessment. Therefore, obviously, a forfeiture occurring subsequent to such time could not logically affect such liability. Nor could acceptance of payment in discharge of such liability after forfeiture be considered as an act inconsistent with insisting upon it. None of the cases cited by respondent's counsel on the subject of waiver and estoppel apply to the situation here.

Curkeet v. Joint School District, 159 Wis. 149.

It is evident that the whole case between the parties is before the court so that to plead over would only prolong the litigation.    Therefore, it seems best to terminate it by a reversal and a remand for dismissal with costs.

*By the Court.*—So ordered.