SCHOMER and another vs. THE HEKLA FIRE INSURANCE COMPANY.

*December 2 — December 17, 1880.*

NONSUIT. *(1) When compulsory nonsuit not granted.*
INSURANCE AGAINST FIRE. *(2) Power of insurer's agent to waive conditions. (3, 4) What acts constitute an agent, by statute.*

1. A compulsory nonsuit should not be granted where the evidence, on the most favorable construction for the plaintiff that can be given it, will justify a verdict in his favor.
2. An agent authorized to issue policies of insurance may, after such a policy is issued, bind the insurer by an agreement that the assured may procure further insurance in other companies, contrary to the conditions of the policy.
3. In pursuance of a custom among the insurance agents of a city, X., one of such agents, to whom an application for insurance had been made (without specification of the companies in which it should be placed), by agreement with Y., another of such agents, procured the risk to be taken in two companies of which Y. was, and X. was not, the authorized agent. X. delivered the policies, countersigned by Y., to the assured,

and collected and delivered to Y. the premiums, which were divided between X. and Y. . The assured did not know of anything that occurred between X. and Y., or that X. was not authorized to act as agent of said two companies. X. knew, when the application was made, that the applicant intended to procure further insurance elsewhere; and, after he delivered the two policies, he assented to such further insurance, contrary to a condition in those policies, and without the knowledge of the companies or Y. *Held*, that, under sec. 1977, R. S., X. must be regarded as an agent, "to all intents and purposes," of the two companies whose policies he delivered, and they are bound by his *waiver* of the condition against further assurance.

4. The object of sec. 1977, R. S., is to change the rule of law that the insured must at his peril know whether the person with whom he is dealing as an agent has the power. he assumes to exercise, and to make an insurance company responsible for the acts of the person who assumes to represent it, in soliciting insurance, issuing policies, etc.

APPEAL from the Circuit Court for *Winnebago* County.
Action on a policy of insurance against fire. After plaintiffs' evidence was in, a nonsuit was granted on defendant's motion; and plaintiffs appealed from the judgment.

The facts shown by plaintiffs' evidence will sufficiently appear from the opinion.

For the appellants there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

1. The agreement for other insurance was part of the original contract, which, whether Lawson had authority to act or not, the company adopted. The arrangement between the plaintiffs and Lawson was, that he should place the insurance to the amount of $1,500, and that $1,000 other insurance should be permitted. Lawson, being unable to place the insurance, applied to the regular agents of the defendant, who assumed the contract which he had made. They took it with the burdens, one of which was that $1,000 additional insurance should be allowed. Wood on Ins., §§ 383, 390, 409; *Meadowcraft v. Ins. Co.*, 61 Pa. St., 91; *Bodine v. Ins. Co.*, 51 N. Y., 117; *Columbia Ins. Co. v. Cooper*, 50 Pa. St., 331; *Commercial Ins. Co. v. Ives*, 56 Ill., 402; *Eclectic L. Ins. Co. v.*

*Fahrenkrug*, 68 id., 463; *Grady v. Ins. Co.*, 60 Mo., 116; *Ætna Ins. Co. Maguire*, 51 Ill., 342; *Ins. Co. v. Webster*, 6 Wall., 129; *United L., F. & M. Ins. Co. v. Ins. Co.*, 42 Ind., 588; Wood on M. & S., §§ 265, 271. 2. As between these parties, Lawson was the agent of the defendant, and had power to waive the condition of forfeiture. When the contract of insurance was made, sec. 1977, R. S., was in force. It therefore entered into and formed part of such contract. *Reilly v. Ins. Co.*, 43 Wis., 449. Before the passage of the acts from which this section is derived, the liability of insurance companies was limited by the authority of the agent making the contract. These agents were of many kinds and grades, and those with restricted and limited authority were in the habit of dealing with the public as if they were general agents with full powers. The object of the acts was to protect the public by changing the law of agency, and making, so far as the public were concerned, but one kind of agents. The language of section 1977 is plain and unambiguous, leaving no room for construction or interpretation. *Ogden v. Glidden*, 9 Wis., 52; *Battis v. Hamlin*, 22 id., 672; *Bidwell v. Whitaker*, 1 Mich., 469; *Barstow v. Smith*, Walk. (Mich.), 394; *Bradbury v. Wagenhorst*, 54 Pa. St., 188; *Rich v. Keyser*, id., 86; *U. S. v. Warner*, 4 McLean, 463; *U. S. v. Ragsdale*, 1 Hempst., 497; *Bartlett v. Morris*, 9 Port., 266; *Farrel Foundry v. Dart*, 26 Conn., 376; *Pearce v. Atwood*, 13 Mass., 324; *Doane v. Phillips*, 12 Pick., 223. If there were any ambiguity, the general words of the statute must receive a general construction. *Harrington v. Smith*, 28 Wis., 60; *Encking v. Simmons*, id., 272. And effect must be given to each word. *Chase v. Whiting*, 30 Wis., 544; *James v. Du Bois*, 1 Harr. (N. J.), 285; *Hutchen v. Niblo*, 4 Blackf., 148.

*J. H. Carpenter*, for respondent:

1. All agreements and negotiations made anterior to the policy were merged in it, and the policy when issued became

the sole contract between the parties. 1 Greenl. Ev., §§ 275, 281. 2. Lawson had no power to waive the forfeiture. He was not in fact an agent of the defendant, nor was he made such by sec. 1977, R. S. That section has not yet received a construction. See *Am. Ins. Co. v. Gallatin*, 48 Wis., 36. It is derived from various sources, of which ch. 13, Laws of 1871, alone has reference to cases like this. See Revisers' Notes, sec. 1977. The design of that act was " to protect the public against unauthorized insurance agents " by requiring all persons transacting such business to obtain certificates from the secretary of state, and by imposing penalties upon all agents acting without such authority. No purpose is indicated to change the rules of law fixing the liabilities of the companies. The provisions of that chapter were incorporated into the revision, and the note of the revisers shows that no change in the substance or scope of the law was intended by the combination of the various sections named into sec. 1977, R. S. The general language of that section must be construed with reference to the context, and in the light of the provisions of the whole chapter in which it stands. Its evident design is to make the persons described, agents " to all the intents and purposes " of the chapter. What such intents and purposes are may be seen by a reference to sections 1916, 1917, 1922, 1925–6, 1944, 1946, 1946 *b*, 1946 *e*, 1947, 1949, 1974, 1976. The chapter is a general code of regulations (partaking somewhat of the nature of police regulations) for the transaction of insurance business in the state. It is designed to bring the whole of such business under the general supervision of an insurance commissioner; to provide for licensing all agents, and to protect the public against unlicensed and irresponsible agents by means of penalties criminal in their nature. The legislature had no intention of altering and overthrowing the fundamental principles of contracts and agency, and destroying the power of the company to regulate their relations with their agents — to say who should be their agents and to fix a

limit to their authority. So to construe the statute would leave the companies at the mercy of all persons who chose to assume to be their agents; persons of whose existence, even, the companies might be ignorant.

Cole, C. J. Under the rule of this court, a nonsuit should not be granted except where the evidence, on the most favorable construction for the plaintiff, will not justify a verdict in his favor. All which the evidence in any degree tends to prove, must be deemed as fully proved; every fact which the testimony, and all reasonable inferences from it, conduce to establish, must be assumed to be established, in passing upon the correctness of the nonsuit. *Imhoff v. Railroad Co.*, 22 Wis., 682; *Sutton v. Wauwatosa*, 29 Wis., 21. Within this rule it is clear to us that this case should have gone to the jury upon the evidence. In the first place it is very plain, under our decisions, that, had the plaintiffs negotiated directly with Palmer & McLaren, the local agents of the defendant at Oshkosh, for the insurance, and had the understanding with them which they did have with Lawson, the company would not be heard to urge a forfeiture of the policy on account of the subsequent insurance on the property. The cases of *Miner v. Ins. Co.*, 27 Wis., 693; *Roberts v. Ins. Co.*, 41 Wis., 321; *Gans v. Ins. Co.*, 43 Wis., 108; *Amer. Ins. Co. v. Gallatin*, 48 Wis., 36, are very distinct and conclusive upon this question.

In *Miner v. Ins. Co.*, Dixon, C. J., states the tendency and result of the modern authorities upon this point to be, that agents authorized to make contracts of insurance may waive any of the written or printed conditions of the policy, and bind the company by such waiver; and that their representations or statements made, or promise, assurance or verbal consent given, to the assured at the time of issuing the policy, or when acting within the scope of their agency, and with knowledge of the facts constituting the breach, will, if confided in and relied on by the assured, who is himself innocent and in-

tentionally conceals nothing affecting the risk, amount to a waiver, and estop the company from taking advantage of the condition waived. Page 698. True, in most of these cases the waiver was in respect to some particular fact or condition of the property, existing at the time of the insurance. Possibly, in principle, the waiver might be held to extend to the future as well; as, for instance, that the insured might obtain additional insurance without avoiding the policy. The only objection to that view is, that where the policy itself, as in the case before us, only permits other insurance to a given amount, all negotiations of the parties upon that subject must be deemed to be merged in the written contract. But, without infringing upon the rule that written contracts cannot be varied by contemporaneous parol agreements, we think there is testimony in the case which tends to show that consent was given to $1,000 additional insurance after the defendant's policy was issued. It appears to us such consent might well be presumed, if the conversations which were had with Lawson upon the subject had been had with the local agents, Palmer & McLaren. It might be improper for us at this time to indicate by any decided expression what weight or importance should be given to the interviews and conversations which were had between the plaintiffs, Lawson and Suhl, as evidence; but we may say that the jury would have been justified in finding from them that, after the defendant's policy was issued, Lawson was informed of the $1,000 additional insurance, and consented to it. So, if there is any ground for holding that Lawson's acts, under the circumstances, bound the defendant, the policy in suit cannot be avoided by the subsequent insurance.

The question then arises, Is there ground for holding on the admitted facts, or is it a reasonable inference from those facts, that the company was bound by the acts of Lawson? He was an insurance agent doing business at Oshkosh, to whom the plaintiffs applied, in the early part of May, 1879, for insurance on the property. Lawson was informed by the

plaintiffs that they desired insurance to the amount of $2,500 upon it; that they would give him $1,500 of the amount, and had promised Suhl $1,000. The plaintiffs did not make application for policies in any particular company; indeed, they did not know what companies Lawson represented. They agreed with Lawson as to the rate of premium, and gave him a description of the property, which he wrote down. Lawson said he would insure it as proposed. About the 8th of May, Lawson delivered to the plaintiffs two policies — one in the defendant company for $750, and one for the same amount in the Roger Williams Company,— at the time consenting to the taking of $1,000 additional insurance. Lawson collected the premiums and delivered them to Palmer & McLaren, and the commissions were divided between these agents and Lawson. It appears that Lawson was unable to take the risk in any company that he represented, and therefore he applied to Palmer & McLaren, who issued the policies which were delivered to the plaintiffs. There was evidence that a custom exists among insurance agents in Oshkosh, that when they cannot locate a risk in a company they represent, they go to another local agent and place the risk. The money is collected by the first agent, and the policy delivered to him; and he delivers it to the insured, and the commission is divided between the two agents. It appears that Suhl, about the 21st of May, procured two policies on the property in other companies, for $500 each. Lawson was informed of this insurance about that time, and there is evidence that he consented to it, or said "that it was all right."

But Lawson testified on the trial that he never pretended to act as the agent of the defendant, but procured the policies from Palmer & McLaren, whom he did not inform that there was permission to make any insurance on the property other than that named in defendant's policy. Such, then, being the facts, can it be said that Lawson must be considered the agent of the defendant, with power to consent to the additional in-

surance? There would seem to be quite as cogent reasons for saying that he was the agent of the defendant as there was for holding that the company was bound by the acts of King in *American Ins. Co. v. Gallatin.* The cases are not really distinguishable in principle, and the controlling facts are much the same. But, however this may be, we have no doubt that the statute made Lawson an agent of the defendant, with power to waive the condition in the policy as to subsequent insurance. Section 1977, R. S., in substance provides that whoëver solicits insurance on behalf of any insurance corporation, or transmits an application for insurance, or a policy of insurance to or from any such incorporation, or makes any contract of insurance, or collects or receives any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business for any insurance corporation, or advertises to do any such thing, shall be held an agent of such corporation to all intents and purposes, and the word "agent," wherever used in the chapter, shall be construed to include all such persons.

Now it is difficult to imagine what object this provision was intended to accomplish, or what purpose subserve, if it has not the effect, under the circumstances, to make Lawson the agent of the defendant in the transaction. His acts, certainly, bring him within both the letter and spirit of the law. He was the only real actor for the defendant in making the contract; *pro hac vice* he assumed to represent, and did represent, the company in the matter; he received the application, settled with the insured the rate and terms of insurance, delivered to them the policy, collected the premiums, and shared in the commission. In fact, he did everything that was done on behalf of the company, except the mere act of countersigning the policy. He was the only person the plaintiffs dealt with; they knew no other agent in effecting the insurance; they were totally ignorant of his relation to the defendant, or of his want of authority to represent and act for

it.   It is idle to contend that he did not in any manner aid or assist in making the contract for the company, when he was, in fact, the only person who did treat with the plaintiffs on its behalf.   The suggestion is made on the brief of the learned counsel for the defendant, that Lawson should be treated as the agent of the plaintiffs, and not the agent of the company. But this view leads to the manifest absurdity that the plaintiffs made the contract of insurance with their own agent, which is not to be entertained.   Indeed, it seems to us plain, if Lawson was the agent of either party in making the contract, he was the agent of the defendant, for which he assumed to act.   Therefore, we say, if the above provision does not apply to him, if it does not have the effect to make him the agent of the defendant, so far as this contract of insurance is concerned, words mean nothing, and the provision is a delusion and should be repealed.

But it is said that it was unreasonable to make the defendant responsible for the acts of Lawson, who was never authorized to act for it or bind it in any way.   The answer to this objection is, the legislature has assumed the right to regulate the business of insurance, and prescribe the manner in which it shall be conducted in this state.   It has declared that whoever solicits insurance on behalf of an insurance company, or makes any contract of insurance, or in any manner aids or assists in making such contract, or transacts any business for the company, shall be held an agent of such company to all intents and purposes.   The obvious intention of the legislature is to make an insurance company responsible for the acts of the person who assumes really to represent and act for it in these particulars, and to change the rule of law that the insured must at his peril know whether the person with whom he is dealing has the power he assumes to exercise, or is acting within the scope of his authority.   If there could be a doubt as to the real object of the section, it would be removed by a reference to its history and origin. . The revisers, in their

notes, say that this section is a combination or union of section 1, ch. 13, 1871; sec. 22, ch. 59, 1870; and part of section 22, ch. 56, 1870, and section 2, ch. 205, 1875; and such seems to be the case. The law of 1871, which contains the clause more directly applicable to the question under consideration, is entitled "An act to protect the public against unauthorized insurance agents." The title of the act indicates the purpose to be in strict accord with the interpretation we have placed upon it. Indeed, we do not see how the provision can fairly receive any other construction. It seems to be designed in the clearest manner to make the company responsible to the public for the acts of one whom it permits to solicit insurance on its behalf, or who receives applications for insurance, makes, or aids in making, contracts of insurance, or transacts the business, whether such person has in fact authority to act for it or not. The law imposes upon the company the duty of seeing to it that none but its regular authorized agents shall do its business or deal with the public. It is certainly not difficult for an insurance company to say to its local agents that they alone must transact its business; that they must in all cases deal directly with the insured in making insurance contracts, and not allow the interference of any stranger in its business, for whose acts it does not wish to be held responsible. That this is the plain object and intent of the statute we have no doubt. And, where the insurance company issues a policy in a case where a person has assumed the right to act for and represent it in making the contract, it must abide by the consequences and meet the liability which the statute imposes upon it.

It follows from these views that the judgment of the circuit court must be reversed, and a new trial ordered.

*By the Court.* — So ordered.