BOURGEOIS, Respondent, vs. NORTHWESTERN NATIONAL INSURANCE COMPANY, Appellant.

*December 1 — December 29, 1893.*

*Insurance against fire: Standard policy: Waiver of conditions.*

Ch. 195, Laws of 1891, provides for a "Wisconsin Standard Policy," to which all fire insurance policies issued in this state shall conform, and that other conditions may be written upon or attached to a policy, but that they "shall in no case be inconsistent with or a waiver of any of the provisions or conditions of the standard policy." *Held*, that since the enactment of this law a local agent cannot, either in writing or by parol, at the time the insurance is effected, change or waive the provision of the standard policy prohibiting future additional insurance.

Bourgeois vs. Northwestern National Ins. Co.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action upon an insurance policy of $2,000 upon plaintiff's dwelling house and furniture therein. The policy was issued December 16, 1891, upon an application dated December 14, 1891, and was what is known as the "Wisconsin Standard Policy," prepared by the state insurance commissioner under ch. 195, Laws of 1891. It contained the following condition: "*This* entire policy, unless otherwise provided by agreement indorsed thereon or added thereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

In January, 1892, the insured effected $2,000 additional insurance upon the same property in another company. The insured property was totally destroyed by fire, February 8, 1892. Upon the trial a special verdict was had, and the jury found in response to an appropriate question that the defendant's local agent was informed, at the time the application for the insurance in question was made, that the plaintiff would take out $2,000 additional insurance upon the house, and that he consented thereto. This consent was by parol, and was the only consent proven or relied on by the plaintiff. The defendant appeals from judgment for the plaintiff on the verdict.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

*Maurice McKenna*, for the respondent.

WINSLOW, J. Although other questions are presented by the record, the single question indicated in the foregoing statement of facts is all that we find it necessary to consider. That question is whether the local agent, at the time the application for insurance is made, may effectually waive by parol the clause prohibiting future additional in-

surance, the policy containing such clause being afterwards accepted and held by the insured.

There are numerous cases in this court holding that the local agent has implied authority, while making the contract of insurance, to waive stipulations or conditions inconsistent with facts then existing; at least, that he had such power prior to the passage of ch. 195, Laws of 1891. It has also been intimated that such a waiver might be made as to conditions prohibiting future acts or defaults. *Schomer v. Hekla Ins. Co.* 50 Wis. 575, 580; *Hankins v. Rockford Ins. Co.* 70 Wis. 1, 5. One serious objection to holding such an attempted waiver effectual as to future conduct is well stated in the opinion in the *Schomer Case*, as follows: "Where the policy itself, as in the case before us, only permits other insurance to a given amount, all negotiations of the parties upon that subject must be deemed to be merged in the written contract." However, the question whether such a waiver of conditions as to future conduct could be effectual was not presented either in the *Schomer Case* or in the *Hankins Case*, and cannot therefore be said to have been decided. It may be said, and with some force, that in the case of *Stanhilber v. Mutual M. Ins. Co.* 76 Wis. 292, a waiver by the local agent of a condition as to future conduct was held effectual, but there were other facts present in that case, and we do not regard it as an adjudication in the affirmative of the proposition now before us. The question, therefore, must be considered as still open. In the absence of legislative action on the subject, it would certainly be a most interesting question, and one not free from doubt. The objection to an affirmative answer, suggested in the *Schomer Case*, is certainly a cogent one. *Phœnix Ins. Co. v. Maxson*, 42 Ill. App. 164.

However, there has been legislative action which, in our judgment, has an important bearing on the question, and

which must be considered. In 1891 an act was passed by our legislature providing for an uniform policy of insurance to be used in this state, known as the "Standard Insurance Policy." Ch. 195, Laws of 1891. This act went into effect September 1, 1891. The policy in suit here was the standard policy provided for by that act, was issued December 16, 1891, and consequently must be governed by the provisions of that act. The act itself provides substantially as follows: (1) That the insurance commissioner shall prepare, with the assistance of the attorney general, a printed form in blank of a policy of insurance to be known as the "Wisconsin Standard Policy," and send a copy to each company doing a fire insurance business in this state. (2) That after September 1, 1891, no insurance company shall issue any form of policy on property in this state except such as conforms in all particulars to the standard policy, and no other conditions or agreements shall be indorsed thereon or made part thereof, except (a) the name of the company, location, amount of stock, and sundry other matters not necessary to be here stated; (b) "printed or written forms of description. and specification or schedules of the property covered by any particular policy, and any other matter necessary to clearly express all the facts and conditions of insurance on any particular risk (which facts or conditions shall in no case be inconsistent with *or a waiver of any of the provisions or conditions of the standard policy* herein provided for) may be written upon or attached or appended to any policy on property in this state." It is unnecessary to state here any further provisions of the act.

This act is broad and sweeping in its terms and scope. It aims to bring order out of chaos. Prior to its passage there were as many different contracts of insurance as there were companies. The variations and differences between the conditions of the policies issued by the various insurance companies were almost infinite in number; new clauses

and conditions were being constantly inserted, generally ingeniously worded and obscurely printed; and, singularly enough, these new conditions were always in the interest of the insurer, and not of the insured. To meet this condition, the act under consideration was passed. That it is a long step in the right direction cannot be doubted. Under it there can be practically but one form of policy. When a man contracts for insurance, he knows that he is contracting for a standard policy and for nothing else, and he knows that he will get that and nothing else.. As the law becomes better known, and the terms of the standard policy better understood, it is manifest that it will be more valuable to the business world.

Thus much as to the purpose and probable effects of this law is apparent to the most superficial observer. More critical examination reveals the undoubted fact that the law was not passed solely for the protection of the insured. It provides, in clear and distinct terms, that other conditions may be printed or written upon or attached to the policy, but that they shall *not be inconsistent with nor a waiver of any of the provisions or conditions of the standard policy.* In thus providing that other conditions may be incorporated in the policy by writing or printing, other methods are plainly excluded under familiar legal principles. The intent plainly was and is that, so far as the conditions and provisions of the standard policy go, they shall govern, and that they shall not be omitted, changed, or waived in any manner. Other provisions not conflicting with them may be added in writing or printing, but the conditions of the standard policy itself must remain unimpaired.

The condition here broken was one of the conditions of the standard policy. It is claimed that it was waived, not in printing or writing, but by mere word of mouth. Can this be successfully maintained? If so, then this part of

Bourgeois vs. Northwestern National Ins. Co.

the law is at once emasculated. If this be so, then the agent may do by the merest casual word of mouth that which neither he nor the company could do by the most formal written stipulations under seal. Such a result cannot be tolerated. The law could be scarcely more explicit in its terms than it is. To our minds, it is clear that, since the enactment of this law at least, the local agent cannot, either in writing or by parol, at the time the insurance is effected, change or waive that provision of the standard policy prohibiting future additional insurance. We are not to be understood as deciding anything further in this case. This is the sole point involved in the decision, and consequently the sole point decided.

The law in question is substantially a copy of chapter 488 of the laws of the state of New York for the year 1886. We are referred to the case of *Quinlan v. Providence W. Ins. Co.* 133 N. Y. 356, decided in 1892, where the court of appeals discuss the effect of that law, and say: " Now, as heretofore, it is competent for the parties to a contract of insurance, by agreement in writing or by parol, to modify the contract *after the policy has been issued*, or to waive conditions or forfeitures." This may well be so. Such a doctrine does not in the least militate against the position taken in the present case, and, as no such question is presented here, we express no opinion upon it.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.