KOERTS, Respondent, vs. GRAND LODGE OF WISCONSIN OF THE ORDER OF HERMANN'S SONS, Appellant.

*October 21—November 17, 1903.*

*Life insurance: Benefit societies: Who are "survivors" of member: Fraud.*

1. The code of a mutual benefit society stated that the purpose of its mortuary fund was that a certain sum be paid therefrom to the "survivors" of a member after his death, and provided that if the "survivors" of a deceased member should not possess a death benefit certificate the money should be paid only to one who should produce an order from the proper court, and that if the "survivors" should produce a certificate they should, on receiving the money, sign the receipt printed on the back of such certificate. *Held*, that the word "survivors" did not include one who was neither a relative of the deceased member, nor a member of his household, nor connected with him by marriage.

2. Where the issuance of a death benefit certificate was procured by false representations by the member that the beneficiary named was one of the class for whose benefit the mortuary fund was established, and the fraud was not discovered until after the member's death, such beneficiary, whose right rests upon the certificate alone, cannot recover thereon.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

This is a controversy over a mutual benefit certificate of insurance. The controversy was submitted to the court without action on an agreed statement of facts. The material facts appearing from this statement are as follows:

Prior to July 29, 1888, the appellant was a society organized under sec. 2002, R. S. 1878, having a charter theretofore granted to it by the National Grand Lodge of the Order of Hermann's Sons. On the last-named date it organized a mutual benefit fund for its members, called a "mortuary fund," and adopted a code for the government of said fund, providing, among other things, as follows:

"(1) The purpose of the mortuary fund shall consist in this: That out of it there shall be paid to the *survivors* of a member of the Order of Hermann's Sons of Wisconsin entitled thereto, who secures to himself a right thereto by making the required payments, the sum of $1,000.00 after his death. . . .

"(3) Every one who at the time these provisions shall become operative shall be a member of the Order of Hermann's Sons in good standing shall be a part owner of the mortuary fund and shall continue to be such so long as he pays his assessments according to the laws; or so long as he shall not signify his voluntary withdrawal from the order. Every newly accepted candidate becomes such part owner of the mortuary fund by his being accepted in the order.

"(4) A part owner of the mortuary fund who shall not have paid his assessments when the lawful time therefor shall have expired is to be regarded forthwith stricken from said part ownership, but shall have the right within thirty days to regain his part ownership upon paying the unpaid assessments with an addition thereto of twenty per cent. If he shall allow such period to expire he will lose his part ownership and cannot again be admitted to such part ownership until after the expiration of one year. A member may voluntarily renounce his part ownership by a public declaration in a regular meeting of his lodge if at the time of such voluntary renunciation he shall have paid all assessments called upon him and if he shall surrender his mortuary fund certificate to the grand secretary through the lodge. . . .

"(9) Every newly accepted member of the order shall as a part owner of the mortuary fund receive a mortuary fund certificate. . . . In his application for membership, the candidate must state to whom, in case of his death, the mortuary money of $1,000.00 shall be paid. . . .

"(10) The mortuary money of $1,000.00 shall be paid by the secretary of the grand lodge upon an order signed by the grand president and grand secretary, in accordance with the conditions contained in the mortuary fund certificate of the deceased brother to the person or persons named therein as the entitled recipients of the same. The payment shall be made within sixty days after the receipt of the notice of death of the brother shall have been made in the manner required. . . .

"(12) In case a part owner of the mortuary fund shall die, whose *survivors* shall not be in possession of a death benefit certificate, the mortuary money shall not be paid out before the entitled recipient or recipients shall produce an order from the proper court.

"(13) In case a member shall die whose *survivors* shall produce a death benefit certificate, the recipients of the death-money therein named shall upon payment thereof sign the receipt or waiver of all claims printed on the back of the certificate, in the presence of the president and secretary of the lodge to which the member belonged."

Prior to December 8, 1888, one Wilhelm Pluns, an unmarried man, had become and was then a member in good standing of the defendant lodge, and on that day made a written application to the lodge for the issuance of a benefit certificate payable to "his sister, *Anna Koerts,*" and represented that *Anna Koerts* was in fact his sister, whereas she was not his sister, nor in any manner related to him, nor a member of his family, all of which Pluns well knew, but the officers of the respondent did not know until after the death of Pluns. Believing these representations to be true, and relying there-

on, the officers of the defendant lodge on the last-named date issued the benefit certificate for $1,000 to Pluns, payable on his death to "his sister, *Anna Koerts,*" with a proviso allowing a change of beneficiaries by the insured in writing. No change of beneficiaries was ever made, and Pluns died February 25, 1896, unmarried, and without issue, his assessments fully paid, and he being still a member in good standing of the defendant lodge. Due proofs of his death were furnished, and demand made by the respondent for the payment of the death benefit to her, which was refused. January 30, 1897, the appellant was duly incorporated under the statutes, and still is a corporation, and is identical with the former society, and assumed all of its obligations and continues its business.

Upon these facts the trial court held that the respondent was entitled to recover on the certificate, and from judgment to that effect the lodge appeals.

For the appellant there were briefs by *Sylvester, Scheiber & Orth,* and oral argument by *Fred Scheiber.*

*C. A. Koeffler, Jr.,* for the respondent.

WINSLOW, J. The fundamental law governing the mortuary fund when the deceased member received his certificate provided in no uncertain terms that the mortuary fund was established for the benefit of the "survivors" of a member. This law remained unchanged up to the time of the death of Pluns, and he was doubtless charged with knowledge of its terms, and must be held to have consented thereto. The first important question in the case manifestly is, therefore, as to the meaning of the word "survivors." Reference to the various sections of the code itself shows that the word is used three times in as many different sections. The first section states that the purpose of the mortuary fund is that out of it shall be paid to the "survivors" of a member after his death the sum of $1,000. The twelfth section provides

that in case of the death of a member whose "survivors" shall not possess a death benefit certificate the mortuary benefit shall only be paid to one who produces an order from the proper court. The thirteenth section provides that, in case a member shall die whose "survivors" shall produce a death benefit certificate, the recipients shall, on payment, sign a certain prescribed receipt. The word must necessarily be given the same meaning in the various sections. It cannot be supposed for a moment that it was used in one sense in one section and in a totally different sense in another section of the same code, treating of the same general subject. Bearing this in mind, it seems that there can be little doubt but that the word was used as referring to a limited class of persons. Whatever doubt there might be on this point were we considering the provisions of the first section alone, is readily dispelled when we consider the provisions of the twelfth and thirteenth sections. These last-named sections unquestionably refer to some definite class of persons as "survivors." Moreover, this conclusion is greatly strengthened when we consider the sense in which the word is commonly used. It is true that, broadly speaking, the word "survivors" includes all persons who outlive another. It is equally true that in common parlance it is universally applied only to members of a class of persons. Thus we speak of the survivors of a shipwreck, or a battle, or a railroad accident, not thereby referring to the whole surviving human race, but only to the class of people who participated in the given occurrence. So, in speaking of the death of a person, we frequently say that he left surviving his widow and certain children or other relatives. We can entertain no doubt but that the word "survivors," as used in the mortuary fund code, has some such limited significance as this. Just what relatives or connections it includes may not be easy of determination, but it seems very certain that it does not include one who, like the

respondent, was neither a relative of the deceased, nor a member of his household, nor connected with him by marriage.

The effect of this conclusion as to the meaning of the word "survivors" is yet to be considered. It does not necessarily follow that the beneficiary named in the certificate cannot recover merely because she is not one of the class named in the mortuary code of the order. In the absence of an absolute statutory prohibition, or a violation of public policy, a mutual benefit society cannot defend on this ground where it has knowingly issued a certificate payable to such a beneficiary, and the assured has fully performed the contract on his part. *Ledebuhr v. Wis. T. Co.* 112 Wis. 657, 88 N. W. 607. But this is not the question here presented. In the present case it was falsely represented to the respondent's officers that the beneficiary was one of the class for whose benefit the mortuary fund was established, and the officers relied thereon, and issued the certificate accordingly, and never ascertained the falsity of the representation until after the death of the assured. This makes a very clear case of fraud. The certificate never would have been issued in favor of the respondent except for the false representation. Her right rests upon the certificate alone, and when it is shown that its issuance in her favor was procured by fraud her claim must necessarily fall.

*By the Court.*—Judgment reversed, and action remanded with directions to render judgment for the appellant in accordance with this opinion.