WELCH, Respondent, vs. FIRE ASSOCIATION OF PHILADELPHIA, Appellant.

*January 13—February 2, 1904.*

*Fire insurance: General agent: Knowledge of agent: Standard policy law: Estoppel in pais: Waiver: Statutes: Proof of loss: Forfeiture.*

1. One who, as a broker, obtains for another, from the regular agent of an insurance company, a policy of fire insurance, delivering it to, and collecting the premium from, such other, and paying the latter to such agent, is, as to such transaction, a general agent of such company under sec. 1977, Stats. 1898.

2. Prior to the standard policy law, knowledge of the agent of an insurance company, at the time of making a contract of insurance for it, of facts affecting the validity thereof, was in regard thereto equivalent to knowledge of such facts by the company.

3. Independently of the standard policy law, knowledge of an insurance company, direct or indirect, at the time of issuing a policy of insurance, of facts respecting the subject thereof affecting the validity of the contract, precludes it, on principles of estoppel *in pais*, from taking advantage of such facts, in case of a loss, to escape liability.

4. The disability provisions of the standard policy law as to waiver do not abrogate the judicial rule protecting a policy holder, upon principles of estoppel *in pais*, as to circumstances affecting the validity of the contract known to the insurance company at the inception thereof.

5. The clause of the standard policy law expressly continuing in force the rule charging an insurance company with the knowledge possessed by its agent at the time of the delivery by him of a policy, was incorporated into such law to prevent impairment of the legal effect of such knowledge as established by the decisions of this court.

6. The effect of the rule so established and preserved is that an insurance company, assuming one attitude as to known facts for the purpose of making an insurance contract, is not permitted to successfully assume a different and inconsistent attitude to avoid it.

7. There being no provision in the standard policy, in connection with that requiring proofs within sixty days after the occurrence of a loss, rendering failure to comply therewith a cause of forfeiture, such failure merely postpones the maturity of the claim till sixty days after such proofs are furnished.

8. The principle last above stated was an element in the judicial policy of this state when the standard policy law was enacted, and was preserved therein by this language, "The loss shall be payable sixty days after the notice of proof of loss required has been received by the company," and by the omission therefrom of any provision making failure to furnish proofs within sixty days after a fire a cause of forfeiture.

9. The provision of the policy last spoken of, that charging an insurance company with knowledge possessed by its agent at the time of the delivery of a policy, vital to the validity thereof, and that charging the company with knowledge possessed by its agent engaged in adjusting a loss thereunder, were incor-

porated in the standard policy in order to prevent impairment of existing rules on the subject, according to the judicial policy of the state.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge.  *Affirmed.*

Action to recover on a fire insurance policy.  The complaint was in the usual form.  The policy was issued April 5, 1902, to run three years.  It was in the standard form.  The insurance was $500 on plaintiff's house and $200 on his personal property therein.  The fire occurred August 12, 1902. Proofs of loss were furnished defendant November 11th thereafter.  The amount sought to be recovered is $500.  Defendant answered claiming a forfeiture for noncompliance with a condition of the policy requiring proofs of loss to be furnished the company within sixty days after the fire, and further because he had only a leasehold interest in the land upon which his house was located, while the policy expressly provided that it should be of no effect if his title was other than absolute, unless otherwise provided by agreement indorsed upon the policy and added thereto; and that it contained the further provision that no agent or officer or representative of the company should have the power or be deemed to have waived any condition of the policy unless such waiver should be indorsed upon or added to the policy.

The evidence was to the effect that proofs of loss were delivered to defendant as stated in the complaint; that plaintiff's title to the realty was as stated in the answer; that no change in writing was made in the insurance contract from the standard policy; that Fowler, who obtained the policy for plaintiff, was not an agent for defendant except by force of the statute; that, acting in the capacity of a broker, he obtained the policy for plaintiff from Loney & Peckham, defendant's agents; that he delivered it to plaintiff, receiving from him the premium therefor and turning it over to such

agents for the benefit of defendant, and that they had such benefit; that at the time of the making of the insurance contract such broker was fully informed as to the nature of plaintiff's title; that he was an insurance agent, and when applied to for a policy was informed as to the nature of plaintiff's title; that thereupon he informed plaintiff that his company would not insure the property, but that he would endeavor to obtain a policy for him in some other company; that Loney & Peckham, defendant's agents, had no knowledge at the time of the delivery of the policy of the character of defendant's title.

On the controverted questions of fact the jury found specially that plaintiff's house was not totally destroyed; that it was injured to the extent of $100, and that his personal property was injured to the extent of $200. Defendant moved for judgment, upon the verdict and the uncontroverted facts, dismissing the complaint, which was denied. A motion for judgment in favor of plaintiff upon the verdict for $300 and interest was granted, and judgment was rendered accordingly.

*Victor Linley*, for the appellant.

For the respondent the cause was submitted on the brief of *Archibald McKay*.

MARSHALL, J. A decision in appellant's favor of one or more of these questions would require a reversal: (1) Was the person who procured the policy for respondent, delivered the same to him, received the premium therefor and paid it to appellant through its agents, Loney & Peckham, its general agent under the laws of this state? (2) If he was such agent, so that his knowledge of the true character of respondent's title must be deemed equivalent to knowledge thereof by appellant, can the latter yet defeat his claim because of the forfeiture clause respecting the title to the subject of insurance being other than absolutely vested in him, and the

prohibition of any change in the insurance contract by any representative of appellant except by agreement indorsed thereon or added thereto? (3) Did failure to furnish proofs of loss within the time stipulated in the policy terminate appellant's liability?

The first question is covered by the statute (sec. 1977, Stats. 1898). It provides:

"Whoever solicits insurance on behalf of any . . . person desiring insurance of any kind, or transmits an application for or a policy of insurance, other than for himself, to or from any such corporation, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance corporation, . . . shall be held to be an agent of such corporation to all intents and purposes unless it can be shown that he receives no compensation for such services."

No argument is needed to demonstrate that the acts of Fowler in reference to the policy in question satisfy some one of the circumstances mentioned in the statute, fixing his status, to have been that of a general agent of appellant. It is contended that, as he acted in the capacity of broker, Loney & Peckham being the regular agents of appellant, whatever business he did was either for such agents or for the assured, hence that the statute does not apply. That is clearly ruled otherwise by *John R. Davis L. Co. v. Hartford F. Ins. Co.* 95 Wis. 226, 70 N. W. 84; *Schomer v. Hekla F. Ins. Co.* 50 Wis. 575, 7 N. W. 544, and other cases, in which it is held that a person who procures a policy of fire insurance for another from the agent of the insurance company issuing the same, acts in a twofold capacity; that of agent for the insured, and, by force of the statute, agent for the insurer; and that his knowledge at the inception of the contract is deemed to be that of the company the same as if he were regularly employed by it as its general agent.

Upon the second question submitted, it appears that, unless

the ruling should be different under the standard policy law, then independently thereof, it must be conceded that the assurer cannot defeat respondent's claim because of any defect in the title to his property known to Fowler when the contract was made, regardless of the terms of such contract. In *Roberts v. Continental Ins. Co.* 41 Wis. 321, after citing a long line of decisions in this court, it was said, in effect, that if, when the agent of an insurance company delivers a policy of insurance, he has knowledge of the facts as regards the subject of the insurance inconsistent with the terms of the policy, the assurer, by accepting the premium, is estopped from declaring the policy void because the terms thereof were not so changed in writing as to conform to the facts. There have been many subsequent decisions to the same effect. *Renier v. Dwelling House Ins. Co.* 74 Wis. 94, 42 N. W. 208; *Zell v. Herman F. M. Ins. Co.* 75 Wis. 521, 44 N. W. 828; *Stanhilber v. Mut. Mill Ins. Co.* 76 Wis. 285, 45 N. W. 221; *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 606, 57 N. W. 347; *Goss v. Agricultural Ins. Co.* 92 Wis. 233, 65 N. W. 1036; *Schultz v. Caledonian Ins. Co.* 94 Wis. 42, 68 N. W. 414; *Johnston v. N. W. Live Stock Ins. Co.* 94 Wis. 117, 68 N. W. 868; *De Witt v. Home Forum,* 95 Wis. 305, 70 N. W. 476; *St. Clara Female Academy v. N. W. Nat. Ins. Co.* 98 Wis. 257, 73 N. W. 767; *Hobkirk v. Phœnix Ins. Co.* 102 Wis. 13, 16, 78 N. W. 160. These propositions, independently of statutory change, are therein firmly established: (1) Knowledge of an agent of an insurance company at the time of delivering one of its policies, of facts regarding the subject of the insurance inconsistent with the stipulations in the policy in respect thereto, is in legal effect knowledge of the company. (2) A person who delivers the policy and receives the premium, though acting as a broker, is also agent for the company within the foregoing rule by force of the statute. (3) If an insurance company delivers one of its policies and receives the premium therefor

with knowledge of facts rendering it void when its terms are applied to such facts, in legal effect it thereby assures its customer that as regards the contract the condition of the property shall be considered in all respects according to the calls of such contract, regardless of the truth of the matter, and invites him to rely thereon; and such invitation being accepted, the company is estopped from thereafter changing its position to the prejudice of the assured, though the policy declares that no condition thereof is subject to waiver except by written agreement indorsed thereon or added thereto. (4) The doctrine of waiver, strictly so called, is not involved in the last foregoing rule. It rests solely on the principle of estoppel *in pais*,—the principle that one person cannot assume a position in his business relations with another in respect to a transaction of a pecuniary nature upon which such other, acting reasonably, has a right to rely, and after such other has so acted change his position to that other's prejudice and obtain judicial aid to enable him to effectuate his fraudulent-purpose.

It is confidently insisted in appellant's behalf that the standard policy law has changed the foregoing judicial rule, and that this court has so held. There is some warrant therefor, though a careful examination of all the decisions bearing on the subject shows that the court has not committed itself to the extent claimed by counsel. There are three classes of cases to be considered: (1) Those involving policies made after ch. 195, Laws of 1891, was passed, and when it was supposed to be valid; (2) those decided after such law was condemned as unconstitutional, but wherein it was referred to in a way to indicate that the decisions might have been otherwise had the attempted legislation been effective; (3) decisions made as to policies governed by the present valid policy law. The provisions under the first law, as regards the questions involved here, are similar to those in the later law except for an additional clause which will

be refered to at length later. So far as declarations were made in the decision respecting the effect of such provisions upon the precise question now here, they should be considered authoritative and followed unless clearly wrong.

The only case of special significance in the first class above mentioned is *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 606, 57 N. W. 347. Language was there used to the effect that the legislative purpose was to have but one form for insurance contracts, to require it to be in writing, and to confine all inquiries as to the legal right of the parties to the statements therein. The only application of that embodied in the decision was this: It was held that a verbal promise by an agent at the time of delivering the policy, that the assured might thereafter do things respecting the subject of the insurance inconsistent with the terms of the policy, is within the prohibition of any agreement respecting the subject of the insurance other than one indorsed upon the policy or added thereto and within the prohibition respecting waiver by agents. The doctrine of waiver, strictly so called, was what was in the mind of the court. That of estoppel preventing the company from breaching good faith with its patron by issuing to him a policy and taking his money therefor with knowledge of conditions rendering it at once void, was not suggested or involved.

*Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738; *Goss v. Agricultural Ins. Co.* 92 Wis. 233, 65 N. W. 1036; *McDonald v. Fire Asso. of Phila.* 93 Wis. 348, 67 N. W. 719; *Hobkirk v. Phœnix Ins. Co.* 102 Wis. 13, 78 N. W. 160, are in the second class referred to. The reasoning in each of them is that there was an effectual waiver of a condition contained in the policy under the judicial rule, that not having been abrogated by the law of 1891 since such law was void. It is fair argument to say from those decisions that had the law been regarded as binding, they would have been to the effect that the standard policy law did abrogate

the judicial rule declared and applied in *Renier v. Dwelling House Ins. Co.* 74 Wis. 94, 42 N. W. 208, and similar cases, though the court stopped short of saying that. The strongest language on the subject is in *Hobkirk v. Phœnix Ins. Co.* as follows:

Ch. 195, Laws of 1891, was enacted for the purpose of prescribing a written form of policy which would prevent any waiver of any conditions therein, except as therein prescribed. On the assumption that that act was valid, this court held, in effect, that the conditions and provisions of such standard policy were binding, and could not be changed or waived, except in the manner indicated, referring to *Bourgeois v. N. W. Nat. Ins. Co. supra.*

The law of 1891 being void, no decision upon the point here involved was necessary, nor was in fact made in any of such cases. The nearest approach thereto was in *Bourgeois v. N. W. Nat. Ins. Co. supra,* decided before the invalidity of the law was discovered, which went on the doctrine of waiver, strictly so called, and the effect of the statute in respect thereto.

*Straker v. Phenix Ins. Co.* 101 Wis. 413, 77 N. W. 752, had to do with a policy issued under the present law, and the effect of knowledge of the agent of acts of the assured during the life of his contract increasing the fire hazard, as regards waiving the condition of the policy rendering the same void in case of any such increase unless permitted by agreement with the company indorsed upon the policy or added thereto. While the standard policy law was referred· to as vital to the question in the case and the decision was largely based on what was said in *Bourgeois v. N. W. Nat. Ins. Co.* it is apparent that not only was the turning question governed by the law of waiver, strictly so called, but the decision could not have been different had there been no statutory policy law. The court has never held, in the face of a policy provision forfeiting the contract for a violation of its

provisions by the assured after the issuance thereof, such provision being accompanied by a stipulation that it shall not be deemed waived other than by a writing indorsed thereon, that a waiver could take place in any other manner. The court has often held to the contrary. *Hankins v. Rockford Ins. Co.* 70 Wis. 1, 35 N. W. 34; *Carey v. German Am. Ins. Co.* 84 Wis. 80, 54 N. W. 18; *Burr v. German Ins. Co.* 84 Wis. 76, 54 N. W. 22. The principle involved, however, has little if any analogy to that of estoppel as applied in *Renier v. Dwelling House Ins. Co.* and similar cases, though it is true that the term "waiver" has been commonly used in such a way as to indicate to the contrary. In *Matthews v. Capital F. Ins. Co.* 115 Wis. 272, 91 N. W. 675, a clear distinction was drawn between the two principles. Although it was there said that waiver is commonly applied to acts going to the validity of the contract rather than those in regard to establishing liability thereon after the happening of a loss, it is made clear that the acts going to such validity which were in the mind of the court, were those occurring after the making of the contract and before a loss; not those involved in its inception. It cannot be doubted that, in the absence of any legislative regulation to the contrary, an insurance company may be guilty of such conduct in the making of an insurance contract as to estop it from successfully pleading the truth as regards the condition of the subject of the insurance inconsistent with the terms of the policy, to avoid paying a loss to the policy holder occasioned by an injury to or destruction of such subject.

After a careful consideration of the matter we are unable to discover any very good reason for holding that it was intended by the legislature, in enacting the standard policy law, to abrogate the judicial rule so firmly established, as above indicated. It is quite apparent that the contrary was intended. In the closing paragraph, sec. 1941—62, Stats. 1898, occurs this significant language, following the dis-

ability clauses upon which appellant relies as indicating an intention to change the judicial rule:

"Up to the time of the delivery of the policy to assured, in all transactions relating to this policy or to the property herein insured, between the assured and any agent of the company, knowledge of the agent shall be knowledge of the company; and in all transactions relating to the subject of insurance, between the insured and any agent of the company after loss, knowledge of the agent shall be knowledge of the company."

It must be presumed that the word "agent" was there used in the same sense as in sec. 1977. Why was that clause framed so perfectly voicing the foundation principle of the doctrine in *Renier v. Dwelling House Ins. Co.* and similar cases, if it were intended to abrogate the judicial rule, as we have termed it, as regards estopping the company by occurrences characterizing the making of the contract, or the further rule in respect to estoppel by conduct of the company acting by its agent after loss, referred to in *Matthews v. Capital F. Ins. Co. supra,* and well established in the law of insurance, at the time the policy law was enacted? Could there have been any other purpose than to extend to policy holders, by legislative enactment, the same protection they had theretofore enjoyed when the making of their contracts was wholly under the control of the parties thereto? What object was there in embodying the clause under consideration in the law at all if it were not to be treated as an exception to that part immediately preceding it, the disability provisions upon which appellant relies? If the two clauses are not to stand together, the latter being an exception in a sense, to the former, then the latter would seem to be clear surplusage. The latter clause was not in the policy prepared by the insurance commissioner under the law of 1891, which was in part construed by the court in *Bourgeois v. N. W. Nat. Ins. Co.* while that part of sec. 1941—62 preceding it is a *verbatim* copy of the commissioner's form. That circum-

stance renders it well-nigh, if not decidedly beyond reasonable controversy, that the added language was used to incorporate into the statute, in effect, existing law as found in the decisions of this court.

If we were to entirely overlook the latter part of the standard policy above discussed, and yet give effect to the judicial rule, as in *Renier v. Dwelling House Ins. Co.* it would not seem to violate the disability clause thereof on the subject of waiver, since, as we have seen, it does not deal with that subject in any proper sense. Such giving effect works no change in the policy, strictly speaking. It only estops the assurer, by reason of its conduct, from successfully alleging that the situation of the subject of insurance is not as indicated therein. In other words, the rule stands guard over the rights of the policy holder, protecting him from loss by reason of the assurer assuming one attitude with knowledge of all the facts, for the purpose of making a policy contract, and then assuming another and inconsistent attitude to avoid it. If the doctrine is right independently of the standard policy law, it seems that nothing therein on the subject of waiver condemns it, while in connection with such subject, as we have indicated, there seems to have been an attempt made to make such doctrine a part of the statute. It could not be successfully contended that it was the purpose of the legislature to enable insurance companies to profit by what was regarded at the time of its enactment as a fraud, without some clear, unmistakable language to that effect. Certainly, in the face of plain indications to the contrary, such a contention can find no favor here.

It is well understood that the judicial rule here discussed is peculiar to insurance contracts, and significantly exceptional in that it ignores the familiar principle applied to written obligations generally, that he who becomes a party to such an obligation is presumed to have knowledge of its contents and is bound thereby, unless by some artifice resorted

to by the other party thereto, reasonably calculated to prevent or deter him from obtaining such knowledge, he is so prevented or deterred. *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246. As an original proposition it would be difficult to justify that special favor to policy holders in actions to recover losses sustained. The long line of decisions in this state supporting it, however, precludes any change thereof other than by legislative enactment. The authorities elsewhere are not all in harmony with it. A very few condemn it. *Northern Assur. Co. v. Grand View B. Asso.* 183 U. S. 308, 22 Sup. Ct. 133, is a significant instance thereof. In that case the departure from general principles is most vigorously condemned in this language:

"It is manifest that the theory that such parol evidence, though it may not be competent to change the written contract, may be received for the purpose of raising an estoppel *in pais,* is a mere invasion of the rule excluding parol testimony when offered to alter a written contract. A party suing on a contract in an action at law must be conclusively presumed to be aware of what the contract contains, and the legal effect of his agreement is that its terms shall be complied with."

The court said further, in effect, the only exception to that is where, by fraud, a person is induced to accept a contract different from the one agreed upon, in excusable ignorance of the variance. The exception thus condemned has the sanction of some forty years of our judicial history and of the general run of authorities. Under the circumstances we do not feel warranted in overturning it or seriously questioning the wisdom of it.

The conclusion to which we have arrived is supported by the courts generally where a policy law exists. That is amply shown by citations in the brief of counsel for respondent, and the absence of authorities to the contrary in that of appellant, and our own inability to discover any. In the sup-

porting authorities it appears that there was no judicial hesi-
tation in holding that a policy like ours does not, in letter or
in spirit, affect the established rule that an insurance com-
pany, barring fraud upon it, participated in by the assured
and its agent (*Koerts v. Grand Lodge, Hermann's Sons,* 119
Wis. 520, 97 N. W. 163), cannot avoid the effect of the law
charging it with knowledge which its agent has at the time
of delivering its policy of insurance, respecting the condition
of the subject thereof. In all cases, or most of them, waiver
is sharply distinguished from estoppel. *Forward v. Con-
tinental Ins. Co.* 142 N. Y. 382, 37 N. E. 615; *Wood v.
Am. F. Ins. Co.* 149 N. Y. 382, 44 N. E. 80; *Robbins v.
Springfield F. & M. Ins. Co.* 149 N. Y. 477, 44 N. E. 159;
*Skinner v. Norman,* 165 N. Y. 565, 59 N. E. 309; *Hadley
v. New Hampshire F. Ins. Co.* 55 N. H. 110; *Spalding v.
New Hampshire F. Ins. Co.* 71 N. H. 441, 52 Atl. 858;
*Clawson v. Citizens' Mut. F. Ins. Co.* 121 Mich. 591, 80
N. W. 573.

Counsel for appellant cites the Minnesota supreme court
as holding contrary to the foregoing in *Anderson v. Man-
chester F. Assur. Co.* 59 Minn. 182, 60 N. W. 1095, 63
N. W. 241. We do not so understand that case. Two points
were there involved; one being that discussed here, and the
other the constitutionality of the standard policy law. Both
were at first decided in favor of the company, one justice ex-
pressing doubt and favoring a rehearing, and another dis-
senting particularly on the first point. A reargument was
ordered, and on the final disposition of the case the justice
who dissented at first wrote the opinion, by which the de-
cision was rested solely on the unconstitutionality of the law.
The other point was entirely omitted from the case.

Appellant's last point is ruled in favor of respondent by
*Flatley v. Phenix Ins. Co.* 95 Wis. 618, 70 N. W. 828. That
is in accordance with the general rule laid down in the text-
books and supported by an abundance of authority, that a re-

quirement in a policy of insurance as regards furnishing the proofs of loss within a specified time, not coupled with any provision making failure to comply therewith a cause of forfeiture, at the most only affects the maturity of the claim. Joyce, Ins. § 3282. That was the doctrine of this court when the standard policy law was framed, and in harmony therewith 'no forfeiture clause was incorporated therein in connection with the requirement for proofs of loss, but this language was so incorporated:

"The loss shall become payable sixty days after notice and proofs of loss herein required have been received by this company." Sec. 1941—57, Stats. 1898.

The fundamental principle involved is that forfeitures are not favored and will be held not to have been intended in the absence of language clearly indicating the contrary. That applies as well to a law as to a contract. So, though in *Flatley v. Phenix Ins. Co.* the question was raised as regards a contract which at its inception was wholly under the control of the parties thereto, it having been issued before we had a valid policy law, it applies just as strongly in this case. Moreover, the doctrine of the court, as indicated, was in effect incorporated into the policy.

*By the Court.*—The judgment is affirmed.